The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 6, 2020

## 2020COA19

**No. 16CA0107, *People v. Thomas* — Crimes — Resisting Arrest
— Assault in the Third Degree — Criminally Negligent Bodily
Injury to an At-Risk Adult; Criminal Law — Lesser Included
Offenses**

A division of the court of appeals considers whether (1) a
defendant resisted arrest when he went limp while being moved to a
patrol car; (2) the condition of the area surrounding an arrest can
properly be considered to prove that a defendant's resistance
created a substantial risk of causing bodily injury to the arresting
officer; (3) causing negligent injury to an at-risk adult is included in
third degree assault causing injury to another person; and (4)
section 18-1.3-801(2)(b), C.R.S. 2019, eliminates level 4 drug
felonies as triggering and predicate felonies under section
18-1.3-801(2)(a).

The division concludes that, by going limp while being moved to the patrol car, the defendant resisted arrest because he was resisting police efforts to maintain physical control over him and to proceed with arrest procedures of booking and bonding. *People v. Tottenhoff*, 691 P.2d 340, 344-45 (Colo. 1984).

A defendant resists arrest when, among other things, he or she uses means other than the direct use or threat of physical force or violence that "create[] a substantial risk of causing bodily injury to the peace officer or another." § 18-8-103(1)(b), C.R.S. 2019. The division concludes that this includes increasing the risk that a peace officer or another will be injured by surrounding conditions.

The division also concludes that proof that the victim was a person does not always prove that the victim was at least seventy years old. Hence, negligent bodily injury to an at-risk adult is not a lesser included offense of third degree assault causing injury to another.

The division further concludes that section 18-1.3-801(2)(b) eliminates level 4 drug felonies as triggering felonies for habitual criminal sentencing, but does not prohibit courts from considering

level 4 drug felony convictions as predicate felony convictions.

Therefore, the division affirms the convictions and sentence.

COLORADO COURT OF APPEALS                                    2020COA19

Court of Appeals No. 16CA0107
Mesa County District Court No. 15CR304
Honorable Charles R. Greenacre, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Weston Jefferson Thomas,

Defendant-Appellant.

JUDGMENT AND SENTENCE AFFIRMED

Division I
Opinion by JUDGE CARPARELLI*
Taubman and Grove, JJ., concur

Announced February 6, 2020

Philip J. Weiser, Attorney General, Carmen Moraleda, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    Defendant, Weston Jefferson Thomas, appeals the judgment of conviction and sentence entered on jury verdicts finding him guilty of third degree assault (a class 6 felony), resisting arrest (a class 2 misdemeanor), and negligent bodily injury to an at-risk adult (a class 6 felony). He also appeals his adjudication and sentencing as a habitual criminal. We affirm.

## I.    Background

¶ 2    Thomas lived in a trailer on the victim's property. According to the victim, she went to Thomas's trailer after receiving complaints that Thomas was being loud and disruptive. When she did so, Thomas grabbed her by the neck with two hands and slammed her into a nearby parked car. During the altercation, Thomas yelled at the victim that she "didn't belong in this world."

¶ 3    S.F., who lived in a nearby trailer, testified that he came out of his trailer when he heard a ruckus. He said he saw Thomas with two hands around the victim's neck, holding her up against a parked car, and yelling that she did not "need to be in this world." S.F. further testified that he separated Thomas from the victim and restrained him on the ground until the police arrived. When the police arrived, they arrested Thomas. As they attempted to

handcuff him, Thomas resisted their efforts by flailing his arms. As they attempted to put him in the patrol car, he resisted their efforts by going limp.

¶ 4 At trial, the evidence centered on Thomas's and the victim's conflicting testimony. The jury found Thomas guilty of third degree assault, negligent bodily injury to an at-risk adult, and resisting arrest.

## II. Sufficient Evidence Supports Thomas's Conviction for Misdemeanor Resisting Arrest

¶ 5 Count 2 of the amended complaint and information alleged that Thomas resisted arrest by using means that "created a substantial risk of causing bodily injury to the peace officer or another; in violation of section 18-8-103[(1)(b)], C.R.S. [2019]." Thomas contends his conviction should be reversed because

    (1) his conduct after he was handcuffed cannot properly be considered to prove the offense of resisting arrest;

    (2) the physical condition of the area in which he was handcuffed and carried to the patrol car cannot properly be considered to prove that he created a substantial risk of causing bodily injury to the arresting officer; and

(3)    there is insufficient evidence that his conduct created a substantial risk of causing bodily injury to the arresting officer.

We reject each of these arguments in turn and conclude that the evidence was sufficient to convict Thomas of resisting arrest.

A.    Standard of Review and Applicable Law

¶ 6    We review a challenge to the sufficiency of the evidence de novo. *People v. Perez*, 2016 CO 12, ¶ 8. To determine whether the evidence presented at trial was sufficient to support a guilty verdict, we evaluate whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, was substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *Id.* at ¶ 24. In doing so, we give the prosecution "the benefit of every reasonable inference that may be fairly drawn from the evidence." *People v. Davis*, 2012 COA 56, ¶ 12.

¶ 7    A person is guilty of resisting arrest when "he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest" by, among other

3

things, using "means which create[] a substantial risk of causing bodily injury to the peace officer or another." § 18-8-103(1)(b).

### B.    The Evidence

¶ 8    One of the responding officers testified that he told Thomas he was under arrest and instructed him to put his hands behind his back. According to the officer, as he attempted to put the handcuffs on, Thomas struggled and kept pulling his arms away. As that officer tried to grab one of Thomas's arms, a second officer tried to grab the other arm.

¶ 9    The responding officer also testified that the area in which he handcuffed Thomas was run down and had debris lying all over the ground. He explained that it was a place where the police were required to step over the debris. The officer testified that as he tried to walk Thomas to the patrol car, Thomas went limp and the other officer had to help carry Thomas approximately twenty feet to the car. He testified that he watched his steps so he would not fall, trying to walk Thomas back to the patrol car, stepping over debris, and preventing Thomas from pulling away from him and fighting him.

¶ 10    On cross-examination, Thomas admitted that he did not want to be arrested and resisted "a little." He also described the area in which he was handcuffed and taken to the car as having "broken glass, and TVs and microwaves, things like that" on the ground. He admitted that if the officer had fallen on the ground, he could have been injured. Thomas further agreed that "going limp when somebody is trying to arrest you could easily cause them to fall down[.]" He testified that because he "was shook up from being jumped, and wanting to be with [his] dog," he "wasn't really thinking about" the risks that his actions posed to the responding officers.

C.    Conduct After Handcuffing Properly Considered

¶ 11    Thomas contends that the arrest was completed when he was handcuffed and that his conduct after that, including his resistance to being transported to the patrol car, cannot properly be considered to prove the offense of resisting arrest. We are not persuaded.

¶ 12    To "effect an arrest, the peace officer must apply a level of *physical control* over the person resisting the arrest so as to

5

reasonably ensure that the person *does not leave.*"  *People v. Armstrong*, 720 P.2d 165, 169 (Colo. 1986) (emphases added).

¶ 13     The police told Thomas he was under arrest, and, by placing handcuffs on him, the police exercised a level of physical control over him.  At that point, a reasonable person in Thomas's situation "would necessarily believe that he was being placed under arrest," was not free to leave, and instead was required to submit to booking and bonding procedures at the jail.  *People v. Tottenhoff*, 691 P.2d 340, 344-45 (Colo. 1984).

¶ 14     So long as the police were present, they had a level of physical control over Thomas that reasonably ensured that he did not leave.  When the police completed their duties at the scene and were leaving the area, they sought to maintain physical control over Thomas by putting him in the patrol car and transporting him to the police station for booking and bonding procedures.  However, Thomas went limp, and in doing so, he resisted the arrest and created a substantial risk that the officers would be injured.

¶ 15     We conclude that it was proper for the jury to consider the evidence of Thomas's conduct after he was handcuffed with regard to the charge of resisting arrest.  We also conclude that, when

6

viewed as a whole and in the light most favorable to the prosecution, *Perez*, ¶ 8, there was substantial and sufficient evidence to support a conclusion by a reasonable mind that by going limp when the police took him to the patrol car, Thomas knowingly attempted to prevent them from proceeding with the arrest by, among other things, using means that created a substantial risk of causing bodily injury to the officers. *See* § 18-8-103(1)(b).

¶ 16    We are not persuaded that a contrary conclusion is required by *People v. Thornton*, 929 P.2d 729, 733 (Colo. 1996), and *Wieder v. People*, 722 P.2d 396 (Colo. 1986), on which Thomas relies.

¶ 17    In *Wieder*, the defendant was found in a car that had struck a power pole. As the police pulled him out of the car, the defendant struggled and the police arrested him for drunk driving and handcuffed him. They then led him to a patrol car and, as they tried to put him in, he head-butted one officer and kneed the other in the groin. 722 P.2d at 397.

¶ 18    Wieder was "convicted of second degree assault in violation of section 18-3-203(1)(f), 8 C.R.S. (1978 and 1985 Supp.), which makes unlawful an assault against a peace officer while 'lawfully

7

confined or in custody.'" *Id.* The court rejected Wieder's contention that second degree assault while confined or in custody "is limited to conduct arising in a detention or correctional facility context and does not apply to a field arrest situation." *Id.* Citing *Armstrong*, 720 P.2d 165, the *Wieder* court said that "the definition of 'custody' necessarily differs from that of arrest for purposes of section 18-3-203(1)(f) . . . , when the person subject to an arrest resists that arrest." 722 P.2d at 398.

¶ 19     Here, Thomas did not assault the officers as they took him to the patrol car, he was not charged with or convicted of assault under section 18-3-203(1)(f), and the definition of "custody" for purposes of section 18-3-203(1)(f) is not in issue.

¶ 20     *Thornton* is similarly distinguishable. There, the defendant was charged with felony escape under section 18-8-208(3), C.R.S. 2019. *See* 929 P.2d at 730. The defendant argued that he was never "in custody or confinement" as required by the escape statute. Relying on *Armstrong*, the Colorado Supreme Court concluded that Thornton was "in custody" for purposes of the escape statute because the police had established physical control of him. *Id.* at 734-35. The supreme court explained that "[p]hysical

control can be established by physical restraint or by the suspect's submission to control." *Id.* at 734. And in *Tottenhoff*, the court said that once physical control has been established, a suspect is required to submit to booking and bonding procedures. 691 P.2d at 344-45.

¶ 21 The issue here is not whether Thomas was in custody for purposes of section 18-8-208(3) or tried to escape, but, rather, whether his resistance to being transported to the patrol car and the police station for booking constituted resisting arrest. We conclude that such conduct can constitute resisting arrest and that it was proper for the court to submit the evidence to the jury for its determination.

D. Physical Condition of Surrounding Area Properly Considered

¶ 22 We also reject Thomas's contention that the physical condition of the area in which he was handcuffed and carried to the patrol car cannot properly be considered to prove that he created a substantial risk of causing bodily injury to the officer. This argument is contrary to logic and the plain meaning of the statute.

¶ 23    As pertinent here, a person commits resisting arrest when he knowingly attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of him or another, by:

> (a) Using or threatening to use physical force or violence against the peace officer or another; or
>
> (b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another.

§ 18-8-103(1).

¶ 24    We review the application of statutes de novo. *Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 68. When the statutory language is clear, we apply its plain and ordinary meaning in a manner that gives effect to the General Assembly's intent, and we construe each provision in the context of the statute "as a whole to give 'consistent, harmonious and sensible effect to all [parts of the statute].'" *Bd. of Cty. Comm'rs v. Costilla Cty. Conservancy Dist.*, 88 P.3d 1188, 1192-93 (Colo. 2004) (quoting *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002)); *accord Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223 (Colo. 2005). And, in so doing, we must not apply the statute in a manner that renders any part of it meaningless or absurd or in a manner that leads to an illogical or

10

absurd result. *State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000); *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 2012 COA 160M, ¶ 9.

¶ 25    Subsections (1)(a) and (1)(b) of section 18-8-103 provide distinct ways in which a person can commit resisting arrest. Subsection (1)(a) is plainly limited to the use or threat of physical force or violence against an arresting officer. Implicit in this description is that the accused knowingly attempted to prevent arrest by causing or threatening to cause bodily injury either by physical contact or an instrument of force or violence. In contrast, subsection (1)(b) explicitly pertains to means other than the use or threat of physical force and requires only that the other means create a substantial risk of bodily injury.

¶ 26    Considering the two subsections together, we perceive nothing in the plain language of the statute dictating that "other means" cannot include conduct that puts an officer at risk of injury by falling or contacting nearby objects or conditions. Accordingly, we conclude that the jury could properly consider evidence of the physical surroundings in which Thomas was handcuffed and transported to the patrol car.

E.     Evidence Sufficient to Prove Resisting Arrest

¶ 27     Viewing the evidence in the light most favorable to the prosecution, as we must, we conclude that it is sufficient "to support a conclusion by a reasonable mind," *Perez*, ¶ 24 (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)), that Thomas resisted arrest by means other than the use or threatened use of physical force and that those means created a substantial risk of causing bodily injury to the arresting officer.

III.     Counts 1 and 3 Do Not Merge

¶ 28     Thomas next contends that his conviction for criminally negligent bodily injury to an at-risk adult (Count 3) should merge into his conviction for third degree assault (Count 1) because the former is a lesser included offense of the latter.  We are not persuaded.

A.     Standard of Review

¶ 29     We review de novo whether an offense is a lesser included offense of another.  *See People v. Torres*, 224 P.3d 268, 275 (Colo. App. 2009).  Because Thomas did not assert merger in the trial court, we review his contention for plain error.

12

## B.    Lesser Included Offenses

¶ 30    Under section 18-1-408(5)(a), C.R.S. 2019, an offense is included in another when it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"  Our supreme court has consistently evaluated whether one offense is a lesser included offense of another within the meaning of section 18-1-408(5)(a) by applying a "statutory elements" or "strict elements" test.  *Reyna-Abarca v. People*, 2017 CO 15, ¶ 53.  In *Reyna-Abarca*, the court held that "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense."  *Id.* at ¶ 64.  The court commented that this test "aligns directly with and gives force to the language of section 18-1-408(5)(a), which requires that a lesser included offense be established by proof of the *same or less than* all of the facts required to establish the greater offense."  *Id.* at ¶ 62.  "Thus, a subset can always be established by the same or fewer than all of the facts of the set of which it is a part."  *Id.*

## C. Thomas's Convictions

¶ 31 On Count 3, Thomas was convicted of criminally negligent bodily injury to an at-risk adult.[1] Thomas was also convicted, on Count 1, of third degree assault, which required proof that he "knowingly or recklessly cause[d] bodily injury to another person . . . ." § 18-3-204(1)(a), C.R.S. 2019.

¶ 32 Thomas argues that Count 3 is a lesser included offense of Count 1 because each of the essential elements of negligent bodily injury to an at-risk adult is a subset of the essential elements of knowingly or recklessly causing bodily injury to another person. Based on the *Reyna-Abarca* court's explanation and application of the subset test, we conclude otherwise.

¶ 33 Proof that the victim was a person does not always prove that the victim was at least seventy years old. Stated in the terms of section 18-1-408(5)(a) and the *Reyna-Abarca* test, proof of injury to an at-risk adult is not established by proof of the same or fewer facts than are required to prove injury to another person. Thus,

---

[1] "'At-risk adult' means any person who is seventy years of age or older . . . ." § 18-6.5-102(2), (4.5), C.R.S. 2019.

14

*Reyna-Abarca* and section 18-1-408(5)(a) both indicate that Count 3 is not included in Count 1.

¶ 34    In contrast, Thomas's argument is that Count 3 is a lesser included offense of Count 1 "because an 'at-risk adult' is always 'another person.'" This argument may have superficial appeal, but it inverts the *Reyna-Abarca* test. Evidence that the victim was a person does not prove that the victim was at least seventy years old. Hence, injury to an at-risk adult is not always established by the same or fewer than all the facts necessary to prove injury to another person.

¶ 35    Accordingly, we conclude criminally negligent injury to an at-risk adult is not included in the offense of knowing or reckless injury to a person. The trial court did not err, let alone plainly err, by not merging Thomas's convictions for third degree assault and negligent bodily injury to an at-risk adult.

IV.   Thomas's Prosecutorial Misconduct Claim Fails

¶ 36    Thomas next contends that allowing the prosecutor's comments during rebuttal closing argument constituted plain error because the comments assumed he was guilty of the charged crimes, and, thus, undermined his presumption of innocence. We

agree that the comments were improper but conclude that reversal is not required because they did not rise to the level of plain error.

## A. Relevant Facts

¶ 37    At trial, four witnesses testified to the events that transpired in early March 2015.

¶ 38    The responding patrol officer interviewed the victim, S.F., and Thomas.  The officer testified that he noticed red marks around the victim's neck when he arrived on the scene.  His photographs of her injuries were admitted at trial.  He also testified that Thomas had cuts on his forehead.

¶ 39    Thomas, however, disputed the other witnesses' testimony. According to Thomas, after spending time with his son and taking a nap, he woke up, noticed pry marks on his trailer door, and was worried that something inside his trailer might be missing.  He pounded on his trailer's cabinet doors and yelled before he suddenly heard a knock at his door.  Holding his dog in his arms, he opened the door and saw S.F. and another unknown male.  S.F. immediately jumped on him, causing Thomas to drop his dog.  S.F. also scratched his face.  The altercation moved to the yard outside of Thomas's trailer, where the victim was standing next to a parked

car. Thomas admitted that it is possible the victim was bumped during the altercation, but he did not remember this.

¶ 40 During rebuttal closing argument, the prosecutor implored the jury to evaluate each witness's credibility in this "he said, she said" case. He stated:

> The Court tells you to look at a person's motive. . . . You get to consider their demeanor. You get to consider the manner in which they testified. And you also get to consider how this case might affect them. And Mr. Thomas is facing potential criminal sanctions.
>
> Mr. Thomas has every reason in the world to get on that stand and tell you that it didn't happen. He has every reason in the world to deny a crime that he wants to avoid a conviction on.

¶ 41 Thomas now contends that these comments undermined his presumption of innocence because they assumed he was guilty. Rather than attacking Thomas's credibility based on record evidence, Thomas argues that the prosecutor made an "impermissible, generalized" attack based on his status as a criminal defendant.

17

B.     Standard of Review and Applicable Law

¶ 42     The determination of whether a prosecutor's statements in closing argument constitute misconduct is within the trial court's discretion.  *See Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005); *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010).  A trial court's prosecutorial misconduct ruling "will not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice."  *People v. Moody*, 676 P.2d 691, 697 (Colo. 1984); *see also Carrillo v. People*, 974 P.2d 478, 485 (Colo. 1999) (equating "gross abuse of discretion" with "abuse of discretion").

¶ 43     When deciding a claim of prosecutorial misconduct, we engage in a two-step analysis.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we determine whether the prosecutor's challenged conduct was improper based on the totality of the circumstances, and, second, we determine whether any improper conduct warrants reversal under the proper standard of review.  *Id.*; *see also Domingo-Gomez*, 125 P.3d at 1048.

¶ 44     "Factors to consider when determining the propriety of statements include the language used, the context in which the

18

statements were made, and the strength of the evidence supporting the conviction." *Domingo-Gomez*, 125 P.3d at 1050; *see also Harris v. People*, 888 P.2d 259, 266 (Colo. 1995) ("[T]he context in which challenged prosecutorial remarks are made is significant, including the nature of the alleged offenses and the asserted defenses, the issues to be determined, the evidence in the case, and the point in the proceedings at which the remarks were made.").

¶ 45    "Where, as here, a defendant does not object at trial to the now-challenged conduct, we will only reverse a conviction if the conduct was improper and rises to the level of plain error." *People v. Nardine*, 2016 COA 85, ¶ 37. "To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Manyik*, 2016 COA 42, ¶ 35 (citation omitted); *see also Strock*, 252 P.3d at 1153 (Whether prosecutorial misconduct requires reversal depends on "the severity and frequency of the misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that

the misconduct constituted a material factor leading to the defendant's conviction.").

## C.    Application

¶ 46    Because Thomas's attorney did not object to the prosecutor's comments, we review this contention for plain error.  In doing so, we must first determine whether the trial court erred when it did not intervene and instruct the jury to disregard the prosecutor's argument.

¶ 47    A prosecutor is permitted to comment on the evidence admitted at trial and the reasonable inferences that can be drawn from it.  *See People v. Samson*, 2012 COA 167, ¶ 31.  Among other things, "[t]he partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'"  *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (quoting 3A J. Wigmore, Evidence § 940 at 775 (Chadbourn rev. 1970)).  Here, because Thomas testified, the jury could properly consider his credibility and his interest in the outcome of the case and the prosecutor could properly argue that it should do so.  We reject Thomas's contention that the prosecutor's argument

impermissibly undermined the presumption of innocence and presumed he was guilty.

¶ 48    Accordingly, we conclude that the trial court did not err when it did not intervene and instruct the jury to disregard the prosecutor's argument.  Further, we conclude the prosecutor's argument did not undermine the fundamental fairness of the trial.

### V.    Thomas Was Properly Sentenced Under the Habitual Criminal Statute

¶ 49    Thomas was convicted of third degree assault and negligent bodily injury to an at-risk adult, each of which is a class 6 felony, and three sentence enhancing habitual criminal counts.

¶ 50    At Thomas's sentencing hearing, the court found that the prosecution proved the following three prior felony convictions beyond a reasonable doubt:

- a 1995 class 4 felony conviction in case number 95CR14 for theft;

- a January 2005 class 6 felony conviction in case number 05CR210 for possession of one gram or less of a schedule II controlled substance on December 16, 2004, in

21

violation of section 18-18-405(1), (2.3)(a)(I), C.R.S. 2004; and

- a June 2005 class 4 felony conviction in case number 05CR1936 for possession of more than one gram of a schedule II controlled substance on April 7, 2005, in violation of section 18-18-405(1), C.R.S. 2005.

¶ 51 Thomas contends that, under recent amendments to Colorado's habitual criminal statutes, the trial court lacked authority to sentence him as a habitual criminal. In particular, he asserts that

- under section 18-1.3-801(2)(a)(I), C.R.S. 2019, his January 2005 and June 2005 drug convictions would have been level 4 drug felonies; and

- under section 18-1.3-801(2)(b), level 4 drug felonies cannot serve as predicate felonies.

A. Sufficiency of the Evidence

¶ 52 Thomas acknowledges that he did not seek a judgment of acquittal or a judgment notwithstanding the verdict in the trial court, but now argues that the prosecution's evidence was not sufficient to sustain his habitual criminal convictions. Challenges

22

to the sufficiency of the evidence may be raised for the first time on appeal and are not subject to plain error review. *See McCoy v. People*, 2019 CO 44, ¶ 27.

¶ 53 We review the sufficiency of evidence de novo. *Strock*, 252 P.3d at 1155. We must determine whether the relevant evidence, when viewed most favorably to the prosecution, is substantial and sufficient to prove that the defendant has been previously convicted of the charged habitual criminal counts. *Id.*; *see also People v. Carrasco*, 85 P.3d 580, 582-83 (Colo. App. 2003).

¶ 54 However, Thomas admits he previously pleaded guilty to a class 6 felony for possession of a controlled substance and, in a separate case, pleaded guilty to class 4 felony possession of a controlled substance. In addition, the record contains ample proof that he also had a prior conviction for a class 4 felony theft. Therefore, we conclude that there was sufficient proof of Thomas's three prior convictions.

B. Application of the Habitual Criminal Sentencing Statute

¶ 55 Although Thomas frames the challenge to his habitual criminal sentence in terms of the sufficiency of the evidence, a closer look shows that he is also asserting that the trial court erred

when it applied the habitual criminal sentencing statute. Thomas did not preserve that issue by objection in the trial court.

### 1. Standard of Review

¶ 56    When determining the proper application of a statute, our task is to effectuate the legislature's intent. *McCoy*, ¶ 37. We give the statute's words and phrases their plain and ordinary meanings in accordance with common usage, apply rules of grammar, and discern their particular meaning in the context of the statute as a whole. We must ensure that our interpretation gives consistent, harmonious, and sensible effect to all parts of the statute and avoid constructions that would render any words or phrases meaningless or lead to illogical or absurd results. *Id.* at ¶¶ 37-38.

¶ 57    The application of a statute is a question of law that we review de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010). However, because Thomas raises this issue for the first time on appeal, if we conclude the court applied the statute erroneously, we apply the plain error standard and reverse only if the error was obvious and "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO

63, ¶ 14 (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005));
*see also Maestas v. People*, 2019 CO 45, ¶¶ 18-32 (Samour, J.,
concurring in the judgment only) (assertions of unpreserved
statutory construction should be reviewed under the de novo
standard of review and, if the trial court erred, plain error review
should be applied to determine whether the error requires reversal);
*People v. Kadell*, 2017 COA 124, ¶ 46 (J. Jones, J., concurring in
part and dissenting in part) (de novo review can be applied when
determining whether there was an error, and plain error review can
be applied when determining whether an error requires reversal).

2. Thomas's January and June 2005 Convictions Are Felony
Convictions For Purposes of Section 18-1.3-801(3)

¶ 58     Section 18-1.3-801(2)(a)(I)(A) provides that anyone convicted of
any felony (a triggering offense) who has three previous felony
convictions (predicate offenses) arising from separate and distinct
criminal episodes must be sentenced to four times the maximum of
the presumptive range.

¶ 59     Thomas does not dispute that the convictions for third degree
assault and negligent injury to an at-risk adult in this case are
sufficient to trigger habitual criminal sentencing, but contends that

25

he did not have three predicate felonies. He argues that his January and June 2005 drug convictions do not qualify as prior felonies because, under section 18-1.3-801(3), "[n]o drug law conviction shall be counted as a prior felony conviction under this section unless such prior offense would be a felony if committed in this state at the time of the commission of the new offense."[2] We are not persuaded.

¶ 60    Article XVIII, section 4, of the Colorado Constitution states: "The term felony, wherever it may occur in this constitution, or the laws of the state, shall be construed to mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other." In 2015, when Thomas committed the assault and negligent bodily injury crimes for which he was sentenced in this case, section 18-1.3-401.5(1), C.R.S. 2019 (enacted in 2013), stated: "For purposes of this section, 'felony' means any felony or drug felony defined in the state statutes." In addition, in 2015, Thomas's 2005

---

[2] In Part V.B.4, we address Thomas's assertions regarding retrospective application of statutes. Here, we note that section 18-1.3-801(3) was enacted on June 7, 2002, and, thus, predated Thomas's January 2005 conviction and his 2015 commission of the offenses for which the court sentenced him. *See* Ch. 318, sec. 2, § 18-1.3-801(3), 2002 Colo. Sess. Laws 1428.

drug convictions would have been level 4 drug felonies punishable by a maximum of one year in prison. *See* § 18-18-403.5(2)(a), C.R.S. 2019. Accordingly, we conclude that at the time of sentencing, Thomas's January and June 2005 convictions were prior felony convictions for purposes of sections 18-1.3-801(2)(a)(I) and -801(3). Colo. Const. art. XVIII, § 4; § 18-1.3-401.5(1).

### 3. Thomas Has Three Previous Felony Convictions For Purposes of Section 18-1.3-801(2)(a)(I)

¶ 61 Thomas argues that his "convictions for simple possession would not have been 'felonies' but rather level 4 'drug felonies.'" According to Thomas, section 18-1.3-801(2)(b)[3] of "the habitual sentencing statute precludes counting level 4 drug felonies as

---

[3] Once again, in Part V.B.4, we address Thomas's assertions regarding retrospective application of statutes. Here, we note that section 18-1.3-801(2)(a) was first enacted as section 18-1.3-801(2) in June 2002 and replaced section 16-13-101(2) as part of the relocation of Title 16 to Title 18. *See* Ch. 318, sec. 2, 2002 Colo. Sess. Laws 1426-28 (effective Oct. 1, 2002). Since then, the statute has changed several times, including in 2011 when it was divided into subsections (2)(a) and (b). Subsection (2)(b) added new language excluding class 6 felony drug possession convictions as qualifying, triggering offenses for habitual criminal sentencing. *See* Ch. 57, sec. 1, § 18-1.3-801(2)(b), 2011 Colo. Sess. Laws 151-52. And in 2013, that subsection was amended to exclude level 4 drug felonies as qualifying, triggering offenses. *See* Ch. 333, sec. 36, § 18-1.3-801(2)(b), 2013 Colo. Sess. Laws 1927-28.

predicate offenses when the defendant possessed a small quantity of drugs." Again, we are not persuaded.

¶ 62 We have already concluded that level 4 drug felonies constitute felonies for purposes of section 18-1.3-801(3).

¶ 63 The meaning of subsections 801(2)(a)(I) and 801(2)(a)(I)(A) is plain. They state that, except as provided in paragraphs (2)(b) and (5) of section 18-1.3-801,

> every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony, shall be adjudged an habitual criminal and shall be punished [as stated in subsections 801(2)(a)(I)(A) and (B)].

¶ 64 The referenced paragraph (b) [subsection 801(2)(b)] states that subsection 801(2)(a)(I)

> shall not apply to . . . a conviction for a level 4 drug felony for attempt or conspiracy to commit unlawful possession of a controlled substance . . . if the amount of the . . . controlled substance possessed is not more than four grams or not more than two grams of methamphetamine, heroin, cathinones, or

28

ketamine or not more than four milligrams of flunitrazepam, even if the person has been previously convicted of three or more qualifying felony convictions.

¶ 65    Giving the words of these provisions their plain and ordinary meanings and reading them in context, we conclude that a level 4 drug felony cannot be a triggering offense for habitual criminal sentencing under section 18-1.3-801(2)(a)(I).  This section is specific to sentencing.  It plainly tells courts that are sentencing defendants for level 4 drug felonies that they may not impose habitual criminal sentences in such cases "even if the person has been previously convicted of three or more [felony convictions arising out of separate and distinct criminal episodes]." § 18-1.3-801(2)(b).  Thus, subsection 801(2)(b) eliminates level 4 drug felonies as triggering offenses for habitual criminal sentencing, but it does not change the nature of qualifying felony convictions as defined in subsection 801(2)(a).  Therefore, we conclude that subsection 801(2)(b) does not prohibit courts from considering level 4 drug felony convictions as predicate felony convictions.

¶ 66    In this case, Thomas's triggering felony convictions were for third degree assault and negligent injury of an at-risk adult, not for

29

drug possession. Consequently, the trial court did not err when it concluded that Thomas had three previous felony convictions and that those convictions were predicate felony convictions.

### 4. *Wells-Yates v. People*

¶ 67 As supplemental authority, Thomas cited *Wells-Yates v. People*, 2019 CO 90M. We conclude that this decision does not require a different result here.

¶ 68 In *Wells-Yates*, the supreme court addressed (1) abbreviated proportionality reviews of habitual criminal sentences; (2) determinations of the gravity or seriousness of triggering and predicate offenses; (3) the gravity and seriousness of narcotic offenses generally; and (4) the gravity and seriousness of narcotic offenses of possession and possession with intent to sell, distribute, dispense, or manufacture. *Wells-Yates*, ¶ 76. None of these issues are present in this case.

¶ 69 Thomas did not request a proportionality review in the trial court, nor has he done so in his briefs on appeal. Instead, in a citation of supplemental authority, he has referred us to paragraphs 42, 43, and 59 of the *Wells-Yates* decision. In the referenced paragraphs, the supreme court focused on abbreviated

proportionality reviews, extraordinary risk crimes, and determinations about the gravity and seriousness of crimes, none of which are at issue here.

¶ 70 In a section captioned "Should Relevant Statutory Amendments Enacted After the Dates of the Triggering and Predicate Offenses Be Considered During an Abbreviated Proportionality Review?[,]" the court concluded that when determining the relative gravity and seriousness of the offense during an abbreviated proportionality review, "the trial court should consider relevant legislative amendments enacted after the date of the offense, even if the amendments do not apply retroactively." *Id.* at ¶ 45. The court also concluded that section of the decision by stating that "legislative enactments that take effect after the date of the offense and have no retroactive application may nevertheless be relevant to evaluate the gravity or seriousness of the offense." *Id.* at ¶ 52. Our analysis here has addressed the retroactive applications of section 18-1.3-801(2) and (3) and section 18-1.3-401.5(1) to Thomas's 2005 drug offenses and the determination of a sentence for his 2015 offenses.

¶ 71    In the referenced paragraphs, we find only one sentence that

pertains to the statutes and issues Thomas has presented on

appeal.  When determining whether an abbreviated proportionality

review should include consideration of statutory amendments

enacted after triggering and predicate offenses, the court said:

> [S]ince Wells-Yates's two predicate offenses of possession of 2 grams or less of methamphetamine, the legislature has reclassified that crime from a class 4 felony that *is eligible to be both a triggering offense and a predicate offense for habitual criminal purposes* to a level 4 drug felony that carries less severe penalties and *is not so eligible.*"

*Wells-Yates*, ¶ 43 (emphases added).

¶ 72    The court made this statement in the context of whether

relevant statutory amendments enacted after the dates of the

triggering and predicate offenses should be considered during an

abbreviated proportionality review.  The statement that level 4

felony offenses are "not so eligible" is brief, ambiguous, and

conclusory.  Importantly, the decision does not include any analysis

of the wording of section 18-1.3-801(2)(b), and the statement is not

necessary to the ultimate holding in the case.  *See Main Electric,*

*Ltd. v. Printz Servs. Corp.*, 980 P.2d 522, 526 (Colo. 1999)

32

(conclusory statement that did not analyze contract terms was dictum); *United States v. Jesse*, 744 P.2d 491, 502-03 (Colo. 1987) (summary of holdings at the end of a decision controlled and ambiguous statement in a footnote did not); *cf. People v. Morehead*, 2019 CO 48, ¶ 10 (rulings logically necessary to its holding become the law of the case). Accordingly, it was dictum and does not control our analysis.

## VI. Colorado's Habitual Criminal Sentencing Statutes Are Constitutional

¶ 73    Finally, Thomas argues, for the first time on appeal, that Colorado's habitual criminal statutes, sections 18-1.3-801 to -803, C.R.S. 2019, are unconstitutional because they allow a judge, rather than a jury, to make necessary findings about whether a defendant was previously convicted. Thomas asserts that this procedure deprived him of his Sixth Amendment right to trial by jury.

¶ 74    Thomas recognizes that his argument has been rejected by numerous appellate decisions. *See, e.g., People v. Huber*, 139 P.3d 628, 631 (Colo. 2006); *People v. Davis*, 2017 COA 40M, ¶¶ 35-38. He asserts that these cases were wrongly decided and should not be

followed. We disagree and see no reason to depart from these decisions.

## VII. Conclusion

¶ 75    The judgment and sentence are affirmed.

JUDGE TAUBMAN and JUDGE GROVE concur.