24CA2169 Marriage of Kelly 10-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2169
Arapahoe County District Court No. 22DR31018
Honorable Kimberly Karn, Judge

In re the Marriage of

Uriah Michael Kelly,

Appellee,

and

Cassandra Anne Kelly,

Appellant.

ORDERS AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE BERNARD*
Román, C.J., and Berger*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

Law Office of Leonard R. Higdon, PLLC, Leonard R. Higdon, Jacqueline M. Schneider, Greenwood Village, Colorado for Appellee

Paul A. Frederiksen, Parker, Colorado for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     This is a dissolution of marriage proceeding between a wife, Cassandra Anne Kelly, and a husband, Uriah Michael Kelly. Wife appeals the district court's permanent orders. She submits the court did not have jurisdiction over the parties, and she challenges the court's determinations on maintenance and dividing up the marital property. We affirm in part, reverse in part, vacate in part, and we remand the case to the court for further proceedings.

## I.     Background

¶ 2     In 2022, husband asked the court to dissolve the parties' fourteen-year marriage. Wife filed a motion to dismiss the petition, asserting the court lacked jurisdiction because the parties had moved to Florida. After a hearing, the court determined wife was domiciled in Florida, but husband continued to be domiciled in Colorado.

¶ 3     The court later entered permanent orders. As is pertinent to our analysis, the court found the value of husband's 401(k) was $69,353.94 and it had a loan against it of $27,494.64. So the court allocated husband his 401(k) in the amount of $41,859.30. The court allocated to wife the parties' debt to wife's parents in the amount of $23,363.89.

¶ 4    With respect to the marital home in Florida, the court

- valued it at $295,800, noting it was encumbered by a mortgage with a balance of $238,558.21;

- allocated the marital equity in the home of $57,241.79 to wife;

- ordered her to assume the mortgage or to refinance it in her name within ninety days; if she could not do so, she was to sell the home within sixty-one days of the order; and

- decided, if wife sold the home and garnered more than $57,241.79 in profit, she must split the proceeds above this amount equally with husband.

¶ 5    With respect to maintenance, the court found husband should pay wife the guideline amount, which it calculated at $385.05 per month for a period of eight years and four months. But the court found husband had paid the entire mortgage on the Florida home in the time the parties owned it, even though husband never lived in the home. These payments totaled $52,977.08. The court considered these payments to be a form of maintenance and credited them to husband, resulting in an overpayment of

$14,472.58 in the amount of maintenance due. As a result, the court found husband did not owe wife any maintenance, but it did not require wife to refund the overpayment to husband.

## II. Jurisdiction

¶ 6 Wife contends the court did not have jurisdiction to preside over the dissolution proceeding because both parties were domiciled in Florida. We disagree.

### A. Applicable Law

¶ 7 To dissolve a marriage, a court must find, among other things, that "one of the parties has been domiciled in this state for ninety-one days" before the proceedings began. § 14-10-106(1)(a)(I), C.R.S. 2025. If this domiciliary requirement is not met, the court lacks subject matter jurisdiction to dissolve the marriage. *See In re Marriage of Barnes*, 907 P.2d 679, 681-82 (Colo. App. 1995).

¶ 8 The determination of a spouse's domicile is a question of fact. *In re Marriage of Akins*, 932 P.2d 863, 868 (Colo. App. 1997). Accordingly, we review the court's finding that husband was domiciled in Colorado for the requisite time before filing the petition for clear error, meaning we will not disturb the finding if it is

3

supported by the record. *See Martinez v. Mintz Law Firm, LLC*, 2016 CO 43, ¶ 17.

¶ 9 Domicile "is the place of one's actual residence with the intention to remain permanently, or for an indefinite time, and without any certain purpose to return to a former place of abode." *Akins*, 932 P.2d at 868; *see also Brandt v. Brandt*, 2012 CO 3, ¶ 43 (domicile is a "person's permanent home to which he or she intends to return to and remain"). "Domicile" is not synonymous with "residence," however, because a person can have more than one residence at a time, but only one domicile. *Old Republic Nat'l Title Ins. Co. v. Kornegay*, 2012 COA 140, ¶ 18; *see Brandt*, ¶ 43. Both residence and intent to remain permanently must coexist to create a person's domicile. *Akins*, 932 P.2d at 868. Once established, a person's domicile continues until another one is established, without regard to any "changes in temporary sojourn." *Id.*

## B. Discussion

¶ 10 The court found, although wife moved to Florida in July 2021, husband never moved to join her. It also found, although it may have been husband's intent to reside in Florida at some point, he

was never domiciled there and remained domiciled in Colorado. The record supports the court's findings.

¶ 11 Both parties testified wife moved to Florida in July 2021, but husband was unable to move because he could not ask for a transfer of employment until at least April 2022. Husband continued to live in Colorado at his father's home. He testified that, after wife moved, he visited Florida only twice for a total of ten days and returned to Colorado after each trip. He also testified and provided exhibits supporting his testimony that he had a commercial driver's license issued out of Colorado; he was registered to vote in Colorado; he titled, registered, and insured his car in Colorado; and he was not aware of receiving any mail at an address outside of Colorado.

¶ 12 We acknowledge wife asserts husband intended to move to Florida once he was able to request a transfer from his employer, he signed a mortgage agreement which appears to state his intent to live in the Florida home, and he alone paid the mortgage for the Florida house. But it is the court's role, and not ours, to resolve the conflicting evidence regarding where and when husband established a domicile, and its resolution of that factual issue is binding on

5

review. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1383-84 (Colo. 1994); *see also In re Marriage of Farr*, 228 P.3d 267, 270 (Colo. App. 2010)(it is the province of the district court to determine the credibility of the witnesses and to resolve conflicting evidence).

¶ 13     We are not persuaded by wife's reliance on *People v. Fox*, 862 P.2d 1000, 1004 (Colo. App. 1993), to conclude husband changed his domicile by virtue of wife alone moving to Florida. *Fox* considered when a "marital domicile" enjoyed the protections of the Fourth Amendment's prohibition on unreasonable searches and hinged on the undisputed fact the defendant and his wife would have remained together in the marital domicile — wherever that might have been located — had the defendant not been incarcerated. *Id.*

¶ 14     In this case, wife submits, by analogy, the "only reason husband did not stay in Florida . . . was that he could not transfer his . . . employment to Florida until April of the next year." This is another attack on the court's finding that, although husband might have intended to move to Florida at some point, he was never domiciled anywhere but Colorado. Because the record supports the

court's finding that husband remained domiciled in Colorado, we will not disturb it.

¶ 15    Last, to the extent wife asserts the court lacked subject matter jurisdiction under section 13-1-124(1)(e), C.R.S. 2025, we disagree. She contends section 13-1-124(1)(e) "requires that the marital domicile has been maintained in Colorado without interruption." But she misreads the statute. Rather, section 13-1-124 confers jurisdiction on Colorado courts for actions related to "the maintenance of a matrimonial domicile . . . if one of the parties of the marriage continues without interruption to be domiciled within the state." The court found that husband continued to be domiciled in Colorado and, as we have discussed, we defer to this finding of fact.

### III.    Property Division

¶ 16    Wife contends the court erred when it divided the marital property. Specifically, she asserts (1) the court inappropriately calculated the amount of husband's 401(k) and the debt owed to wife's parents; (2) its order relating to allocation of profit if the marital home were to be sold was contrary to Colorado law; and (3) it did not make any finding about the total assets and debts

allocated to each party. Although we agree the court's order relating to the profit made on the marital home was erroneous, we affirm the remaining property division orders.

### A. Applicable Law and Standard of Review

¶ 17 Before dividing the marital estate, a court must first determine whether each asset or debt is marital property, which is subject to division, or separate property, which is not. § 14-10-113(1), C.R.S. 2025. Assets acquired and debts incurred during the marriage are presumed marital, but this presumption can be rebutted with evidence proving an exception listed in section 14-10-113(2). § 14-10-113(3); *see In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. App. 2006)("Marital liabilities include all debts that are acquired and incurred by [the spouses] during their marriage.").

¶ 18 Next, a court must value each asset or debt. *In re Marriage of Wright*, 2020 COA 11, ¶ 4; *Jorgenson*, 143 P.3d at 1172. It may adopt either spouse's valuation or arrive at its own, so long as the valuation is reasonable considering the evidence as a whole. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 41. Property is valued as of the date of the decree or as of the date of the hearing on the

disposition of property if this hearing precedes the date of the decree.  § 14-10-113(2), (5).

¶ 19     Finally, a court must equitably divide the marital estate, considering all relevant factors.  § 14-10-113(1); *see In re Marriage of Evans*, 2021 COA 141, ¶ 50; *Wright*, ¶ 3; *see also Jorgenson*, 143 P.3d at 1172 (distribution of marital debts is like property division).  The division must be equitable, but it need not be equal.  *Wright*, ¶ 3.

¶ 20     A court has broad discretion to divide the marital estate equitably based on the particular facts and circumstances of each case, and we will not disturb its decision absent an abuse of that discretion.  *In re Marriage of Collins*, 2023 COA 116M, ¶ 19; *see* § 14-10-113(1); *In re Marriage of Smith*, 2024 COA 95, ¶ 67 (weighing the statutory factors is within the court's sound discretion).  A court abuses its discretion when it misapplies the law or its decision is manifestly arbitrary, unreasonable, or unfair.  *Medeiros*, ¶ 28.  Specific findings on every statutory factor are not required, provided a court's overall findings allow us to determine whether its decision was supported by competent evidence.  *Collins*, ¶ 19.

## B. Discussion

¶ 21 When valuing husband's 401(k), the court found it was marital property and the amount in the account was $69,353.94, with a loan against the account of $27,494.64. The court therefore found the account had a marital value of $41,859.00 and allocated it to husband.

¶ 22 Wife asserts the court erred because the court's valuation merely subtracted the loan amount from the balance and, as a result, ignored "that the loan is an asset that is owed to the account that is not considered elsewhere" in husband's financials or property division. So, she continues, the court "hid" the debt of $27,494.64 from consideration in the property division. Accordingly, she asks us to remand the case to the court to award husband the 401(k) in the amount of $69,353.94.

¶ 23 We decline wife's request because, even if the court erred by subtracting the amount of the loan from the 401(k) and awarding the balance to husband, she does not explain how this harmed her. If we were to remand with instructions to value the 401(k) at $69,353.94, the court would also have to allocate the $27,494.64 loan against the 401(k), leaving husband with the same allocation

of property and the same debts as set forth in the permanent orders. *See* C.R.C.P. 61; *see also In re Balanson,* 25 P.3d 28, 36 (Colo. 2001)("Errors by the trial court in determining the property division in a dissolution case are reversible when the aggregate effect of such errors affects the substantial rights of the parties.").

¶ 24    Wife next disputes the amount of the debt to her parents. The court found that the balance on the debt the parties borrowed from wife's parents amounted to $23,363.89 and allocated it to wife. Wife first submits the court's determination that wife's parents were not collecting interest on the loan was error. The court noted that, "[a]lthough there is an interest rate in the written document, the evidence established that the parties have borrowed several times from [w]ife's parents, have never paid interest, and there is no communication from the parents to husband or wife regarding how much interest is due and owing."

¶ 25    Wife asserts this finding was erroneous because evidence showed wife's parents had communicated about the debt on several occasions. We agree evidence showed wife's parents communicated with the parties about the debt in general, but the court's finding was there had been no communication about the *interest* accrued

on the debt. The evidence wife cites does not address interest on the debt. And, to the extent wife contends other evidence established her parents intended to, or did, collect interest on the debt, husband testified there had been no interest charged on the loan to his knowledge. We are not free to reweigh the court's factual findings. *Farr*, 228 P.3d at 270.

¶ 26 Next, wife contends the amount the court found owing on the debt to her parents is not supported by the record. We agree the court incorrectly calculated the amount owed. It found the evidence established the parties had borrowed a total of $60,300.00 and had paid $37,136.11. This leaves a balance owed of $23,163.89 rather than the court's stated amount of $23,363.89. But we do not see, and wife does not explain, how she was harmed by this calculation error amounting to only $200.00. *See* C.R.C.P. 61; *Balanson*, 25 P.3d at 32.

¶ 27 Wife next takes issue with the court's order that, if she must sell the marital home because she cannot refinance it, she must split any profits over $57,241.79 (the marital value awarded to her) with husband. She asserts this order is "contrary to established

Colorado law" because husband is not entitled to any future appreciation.

¶ 28     We agree with wife that, because the court awarded the marital home to her in the permanent orders, any later appreciation is hers. *See In re Marriage of Wormell*, 697 P.2d 812, 814 (Colo. App. 1985)(noting husband was not entitled to share in the future appreciation of the marital residence awarded to wife because property is valued at the time of the dissolution hearing or as of the hearing on property division, whichever occurs first); *see also In re Marriage of Campbell*, 599 P.2d 275, 275-76 (Colo. App. 1979)(district court committed reversible error when it awarded the wife the increase in value of the marital residence when sold after the dissolution); § 14-10-113(3). We therefore vacate that portion of the order requiring wife to split any proceeds over $57,241.79 with husband if she must sell the marital home.

¶ 29     Last, wife submits the court erred because it did not make any finding about the total assets and debts allocated to each party. She provides no authority stating a final accounting is required, and the court's order is sufficient for us to understand the total marital assets and debts and how they were allocated. *See In re*

*Marriage of Gibbs*, 2019 COA 104, ¶ 9 ("The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order.").

## IV.    Maintenance Obligation

¶ 30    Wife challenges the court's decision that husband fulfilled his maintenance obligation.  She asserts, among other reasons, the court erred when it reduced husband's income by $900.00 to account for child support paid to his newborn son.  Because we cannot ascertain how the court landed on the amount of $900.00, we agree.  But, on remand, the court may consider the mortgage payments husband made during the pendency of the proceeding when determining the amount and the length of the term of maintenance.

### A.    Applicable Law and Standard of Review

¶ 31    Section 14-10-114(3), C.R.S. 2025, specifies the process a court must follow when considering a maintenance request.  *Wright*, ¶ 13.  The court must first make findings concerning (1) the amount of each party's gross income; (2) the marital property apportioned to each party; (3) the financial resources of each party; (4) the reasonable financial need as established during the marriage; and

14

(5) whether the maintenance awarded would be deductible for federal income tax purposes by the payor and taxable income to the recipient. § 14-10-114(3)(a)(I); *see also Wright*, ¶ 14.

¶ 32 After making these initial findings, the court must determine the amount and term of maintenance, if any, that is fair and equitable to the parties after considering, among other things, the guideline amount and term set forth in section 14-10-114(3)(b). § 14-10-114(3)(a)(II); *Wright*, ¶ 15.

¶ 33 The advisory guidelines are a "starting point" for the determination of fair and equitable maintenance awards. § 14-10-114(1)(b)(II). The advisory guideline amounts are based on the parties' "adjusted gross income," which means gross income less pre-existing court-ordered child support obligations actually paid by a party and the adjustment to a party's income as determined by application of the child support guidelines in section 14-10-115(6)(b), C.R.S. 2025, for any children who are not children of the marriage for whom the party has a legal responsibility to support. § 14-10-114(8)(a)(I).

¶ 34 We review a court's maintenance award for an abuse of discretion. *Medeiros*, ¶ 58; *In re Marriage of Davis*, 252 P.3d 530,

15

533 (Colo. App. 2011).  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.  *Medeiros*, ¶ 28.  A court must "make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order."  *Wright*, ¶ 20 (quoting *Gibbs*, ¶ 9).

## B.    Child Support Deduction

¶ 35    The court determined husband's monthly income was $8,379.10.  After considering the statutory factors set forth in section 14-10-114(3)(a)(I), it determined wife had a need for support.  It then determined under the maintenance guidelines husband must pay wife the monthly amount of $385.05 for eight years.  The court arrived at that number by taking husband's monthly income and adjusting it by $900.00 per month for support paid to his son born to another woman.  Wife submits this was error because the court did not explain the foundation for the $900.00 deduction.  We agree.

¶ 36    When discussing support for his newborn child, husband testified, "[I]t's looking between [$]800 to $1,000 a month."  In response to questioning from the court, husband clarified he was

currently supporting the child and there was no court order or case filed for child support. But he had a "written agreement" with the child's mother about child support. The record does not establish how much child support husband paid to the mother of his child or document any such payments. In sum, we cannot discern how the court decided $900.00 should be deducted from husband's income for child support and we must therefore remand the maintenance determination to the court.

¶ 37 On remand, the court must take evidence about the parties' then existing financial circumstances and, as such, we do not address wife's several additional contentions related to the court's determinations concerning income and other things. *Id.* at ¶ 24 (declining, after maintenance award was reversed and remanded, to consider argument that court improperly calculated a party's income).

### C. Credit for Mortgage Payments

¶ 38 Because it may arise on remand, we will consider whether the court erred when it found husband's maintenance obligation could be offset by the amount he paid on the Florida mortgage.

¶ 39　　The court found husband had paid the mortgage on the Florida home since it was purchased for a total of $52,977.08. It considered this "as a payment of maintenance" and found husband had fulfilled his entire obligation to wife, plus an overpayment of more than fourteen thousand dollars. The court did not abuse its discretion by crediting husband for the amount paid on the mortgage.

¶ 40　　Wife asserts the court erred because (1) there was no order for husband to pay temporary maintenance, and the mortgage payments could not be considered "maintenance" under section 14-10-114(2); and (2) husband's mortgage payments were not "from one spouse to the other."

¶ 41　　First, the court's order does not run afoul of section 14-10-114(2). That statute provides the court may order the payment of maintenance at the time of permanent orders — not whether the court may consider mortgage payments made during the pendency of a proceeding when deciding whether a permanent order of maintenance would be fair and equitable. § 14-10-114(2).

¶ 42　　Next, we agree the court never ordered husband to continue making mortgage payments and the parties never requested

temporary maintenance. But, to the extent wife submits such orders were required before the court could consider the mortgage payments as a factor when determining the maintenance amount and term, we are not persuaded.

¶ 43     The statute provides a nonexclusive list of factors a court shall consider when determining the amount and term of maintenance. § 14-10-114(4)(c)(I)-(XIII). As part of its maintenance determination, the court in this case was permitted to consider "any other factor" it "deem[ed] relevant." § 14-10-114(4)(c)(XIII).

¶ 44     Wife does not contend the mortgage payments were irrelevant. We therefore do not agree the court erred when it offset wife's maintenance award with the amount of mortgage payments made. *See Smith*, ¶ 67 (weighing the statutory factors is within a court's sound discretion).

¶ 45     Last, wife contends the court's order that husband had met his maintenance obligation was erroneous because it created an "unmodifiable" award without "the necessary findings," especially considering wife's medical conditions. But she does not develop this argument further, and we therefore decline to address it. *See Woodbridge Condo. Ass'n, Inc. v. Lo Viento Blanco, LLC*, 2020 COA

19

34, ¶ 44 (declining to consider undeveloped and conclusory contentions of error made without supporting argument or authority).

## V. Attorney Fees

¶ 46 Husband requests an award of attorney fees and costs related to this appeal. But we will only award attorney fees and costs if the party seeking them states a legal and factual basis for the award. C.A.R. 39.1; *In re Marriage of Schlundt*, 2021 COA 58, ¶ 53; *see also Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984)("A request to impose sanctions has been denied where the appellee failed to . . . clearly state the basis for the request."). Husband does not cite a statute or rule or explain what facts support his request. Accordingly, we deny his request.

## VI. Disposition

¶ 47 The portion of the court's permanent orders requiring wife to split the proceeds of the sale of the marital home is vacated. The court's maintenance determination is reversed and remanded for further proceedings. All other portions of the permanent orders are affirmed.

CHIEF JUDGE ROMÁN and JUDGE BERGER concur.