The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Gerald Lee HICKAM, Defendant-Appellant.

No. 83SA243.

Supreme Court of Colorado, En Banc.

June 11, 1984.

As Modified on Denial of Rehearing July 16, 1984.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Patricia Wallace, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Busch & Cohen, P.C., Michael A. Cohen, Lakewood, William S. Retrum, Arvada, for defendant-appellant.

ERICKSON, Chief Justice.

Defendant, Gerald Lee Hickam, appeals his convictions for first-degree felony murder, § 18–3–102(1)(b), 8 C.R.S. (1978), second-degree murder, § 18–3–103, 8 C.R.S. (1978), and conspiracy to commit aggravated robbery, § 18–2–201, 8 C.R.S. (1978). We affirm the convictions for felony murder and conspiracy to commit aggravated robbery. The second-degree murder conviction is reversed. We remand to the trial court to vacate the defendant's conviction and sentence for second-degree murder.

## I.

The facts in this case center on an aborted attempt by the defendant and two co-conspirators to rob certain individuals at a Golden, Colorado motel of a large quantity of cocaine. When the robbery attempt failed, the defendants were confronted by a security guard and in a shoot out the security guard was killed.

The defendant was informed that narcotic dealers at a Golden motel had a large quantity of cocaine in their possession. The defendant drove to the motel in his El Camino with two co-conspirators and sought to locate the room where the individuals with the cocaine were staying. When they found the room they took strategic positions to carry out the robbery. A man left the room and headed for the motel parking lot. The defendant stopped the man at gun point and took a brown paper sack from him. The brown paper sack contained scales for measuring cocaine, but no cocaine. The defendant put the scales in his El Camino and returned to stake out the motel room. Shortly thereafter, the curtains on the window of the room they were watching flew open and the defendant fired a shot through the window injuring one of the occupants. The defendant and his co-conspirators fled. The security guard fired shots and the defendant returned fire mortally wounding the security guard.

The guard, prior to the exchange of gun fire, had observed the defendant and his cohorts acting suspiciously and had reported their actions to other motel employees. When the security guard did not appear at the motel bar to assist in closing, a search was commenced by the employees and the police were notified. The police found the

guard's body. The police, in searching the clothing of the guard, found the license plate number of the defendant's El Camino written on a piece of motel stationery that was in the guard's pocket. The defendant was arrested the next day.

## II.

▌ The defendant was charged with first-degree felony murder and first-degree murder after deliberation, § 18–3–102(1)(a), 8 C.R.S. (1978), for a single homicide. He was convicted on the first-degree felony murder charge and of the lesser included offense of second-degree murder. A defendant may not be convicted of both first-degree felony murder and first-degree murder after deliberation for a single homicide. *People v. Lowe,* 660 P.2d 1261 (Colo.1983). *Lowe* applies to the first and second-degree murder convictions in issue here. "Only one conviction of murder is permitted for the killing of one victim.... It would be a strange system of justice that would permit the defendant to be sentenced to two ... sentences for the killing of one person." *Lowe,* 660 P.2d at 1270–71 (citation omitted). Accordingly, the second-degree murder conviction is reversed with directions to dismiss and vacate the conviction and sentence.

## A.

On appeal, the defendant contends that it was reversible error to instruct the jury that self-defense was not a defense to felony murder.[1] The defendant asserts that the shots fired by the security guard were an intervening event and unrelated to the attempted robbery. He claims that the security guard's actions constituted an illegal use of force and that the record does not establish that the security guard knew of the aborted robbery attempt, or that he identified himself to the defendant as a security guard. Therefore, according to the defendant, he could reasonably have believed that the actions of the security guard were unrelated to his activities at the motel, and thus constituted an illegal use of force by the security guard which justified his returning fire. We reject the defendant's argument.

▌ A defendant may be guilty of felony murder under section 18–3–102(1)(b), 8 C.R.S. (1978), where the death of a person occurs during the immediate flight from the commission or attempted commission of a robbery.[2] In *People v. McCrary,* 190 Colo. 538, 553, 549 P.2d 1320, 1331 (1976), we said: "[E]scape from the scene of the underlying felony is part of the *res gestae* of a crime so that a murder committed to facilitate the flight can be felony murder." (Citations omitted.) *See also People v. Morgan,* 637 P.2d 338 (Colo.1981) (it is felony murder where the homicide enhances the defendant's chances of escape); *Whitman v. People,* 161 Colo. 110, 420 P.2d 416 (1966) (the homicide was committed in perpetration of a robbery where the defendant's get away car collided with the victim's car); *Bizup v. People,* 150 Colo. 214, 371 P.2d 786 (1962) (the shooting of the robbery victim was within the *res gestae* of the initial crime and an emanation

---

1. We limit our analysis to whether self-defense can be asserted under the facts of this case. We do not decide the larger issue of whether self-defense can ever be a defense to felony murder. *But see People v. Burns,* No. 81CA1148, (Colo. App. Dec. 29, 1983), *petition for cert. filed, Burns v. People,* No. 84SC54 (Colo. Feb. 9, 1984).

   *State v. Chavez,* 99 N.M. 609, 661 P.2d 887 (1983), *State v. Celaya,* 135 Ariz. 248, 660 P.2d 849 (1983), and *State v. Rider,* 229 Kan. 394, 625 P.2d 425 (1981), have upheld the denial of a self-defense instruction in felony murder cases.

2. Section 18–3–102(1)(b) provides:
   (1) A person commits the crime of murder in the first degree if:

   ....

   (b) Acting either alone or with one or more persons, he commits or attempts to commit arson, robbery, burglary, kidnapping, sexual assault in the first or second degree as prohibited by section 18–3–402 or 8–3–403, or a class 3 felony for sexual assault on a child as provided in section 18–3–405(2), and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone....

thereof, even though it came later than the robbery, where the defendant was still making his escape).

■ Here, the defendant was in immediate flight from a robbery and an aborted robbery attempt. The shooting of the security guard was intended to facilitate his flight from the scene and to enhance his chance of escape. The shots fired by the security guard were not an intervening event which caused the security guard's death to be outside the scope of the felony.

■ The defendant also asserts that he was denied equal protection of the law when the trial court refused to give a self-defense instruction on the felony murder charge, when such an instruction was given for the murder after deliberation charge. The elements of felony murder differ from the elements of other homicide crimes. *Whitman*, 161 Colo. 110, 420 P.2d 416. Hence, a defendant charged with felony murder is not similarly situated to one charged with another type of homicide. Facts that may constitute a defense to murder after deliberation may not constitute a defense to felony murder. *Cf. People v. Fink*, 194 Colo. 516, 574 P.2d 81 (1978). Accordingly, the defendant was not denied equal protection of the law.

### B.

The defendant claims that his felony murder conviction constituted a deprivation of equal protection of the law because he was convicted solely on proof of the mental culpability element required for the robbery. He argues that if felony murder is to be classified as first-degree murder the prosecution should be required to prove that he had the specific intent to kill. To support his argument the defendant cites *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975) (criminal statutes imposing different penalties for identical conduct irrationally discriminate against an accused in violation of equal protection), and *People*

*v. Marcy*, 628 P.2d 69 (Colo.1981) (extreme indifference first-degree murder was held to be not constitutionally distinguishable from second-degree murder).

■ A defendant may be convicted of a first-degree felony murder where the only showing of mental culpability is for the underlying general intent felony. *Whitman v. People*, 161 Colo. 110, 420 P.2d 416 (1966); *Early v. People*, 142 Colo. 462, 352 P.2d 112 (1960). In *Whitman*, we said:

> [T]urpitude of the felonious act, in this case robbery, supplies the element of deliberation and design to effect death, and that therefore no express or implied design to effect death is essential and the murder is still of first degree though "causal and unintentional."

161 Colo. at 115, 420 P.2d at 418.

■ In *People v. Morgan*, 637 P.2d 338, 345 (Colo.1981), we rejected the argument that the equal protection holding of *Calvaresi* requires that proof of a mental culpability element be made in a felony murder prosecution and said: "Felony murder is distinguishable from other forms of homicide so as not to come within the parameters of *Calvaresi*." The element of causing a death during the commission of a felony supplies the mental culpability element for first-degree murder.

### C.

Prior to the trial in this case, two of the prosecution witnesses were granted immunity from prosecution by order of the trial judge pursuant to section 13–90–118, 6 C.R.S. (1973).[3] The defendant now contends that his counsel was not given notice of the ex parte grants of immunity and, hence could not effectively impeach the witnesses by showing their bias. He claims that he was denied effective assistance of counsel. We disagree.

■ "[R]eversal on the basis of failure to disclose certain information to the defendant is mandated *only* where the infor-

---

**3.** The two witnesses were the narcotic dealers who occupied the room where the defendant fired the shot.

mation might have affected the outcome of the trial." *People v. Thatcher*, 638 P.2d 760, 768 (Colo.1981) (emphasis in original). *See also United States v. Montoya*, 716 F.2d 1340 (10th Cir.1983); *cf. Strickland v. Washington*, ⸺ U.S. ⸺, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (the Supreme Court established standards to determine whether a criminal defendant has met the burden of proving ineffective assistance of counsel). There is nothing to indicate, however, that defense counsel's lack of knowledge regarding the grants of immunity might have in any way prejudiced the defendant so as to affect the outcome of the trial. It was brought out in the direct examination of each of the witnesses that they had been told that they would not be prosecuted on the drug charges. On cross-examination counsel for the defendant was allowed to question both witnesses regarding their understanding of whether charges would be brought against them.

■ Defendant contends the prosecution had an affirmative duty to notify his counsel of the ex parte grants of immunity pursuant to C.R.C.P. 49(c). The order was available, however, to defense counsel in court records. The prosecution's failure to give defense counsel notice of the grants of immunity was harmless error. *Fasso v. Straten*, 640 P.2d 272 (Colo.App.1982).

### D.

While the jury was returning from a lunch break during its deliberations a newspaper reporter questioned some jury members on whether they had reached a verdict. The jurors referred the question to the bailiff. The defendant contends that the jury was tainted by the contact between the jurors and the newspaper reporter. At the time of the inquiry, the bailiff informed the trial judge of the contact. Although the trial judge questioned the bailiff regarding the contact, he did not question the jury. The trial judge did not inform counsel for either side of the occurrence. Defense counsel learned of the contact from the bailiff just prior to the reading of the verdict in a casual conversation. Without claiming any prejudice from the contact itself, the defendant asserts reversible error because defense counsel was not informed of the contact at the time it occurred so corrective measures could have been taken.

■ To request a new trial based on a tainted jury the defendant must show evidence of prejudice. *People v. Montoya*, 44 Colo.App. 234, 616 P.2d 156 (1980); *People v. Davis*, 39 Colo.App. 63, 565 P.2d 1347 (1977). Prejudice will not be presumed merely on the showing of an improper communication with a juror. *People v. Hunter*, 43 Colo.App. 406, 607 P.2d 1026 (1979). Defendant makes no claim of prejudice.

■ The trial judge had the discretion to determine if prejudice occurred. *Montoya*, 616 P.2d 156. The trial judge did not abuse his discretion by failing to inform counsel of the contact once he had determined from his interview with the bailiff that no prejudice had occurred.

### E.

The defendant alleges that counts 2 and 3 of the information are unconstitutionally vague, thus violating his right to due process of law, because the information fails to indicate whether the robbery they rely on is the robbery of the man in the parking lot or the attempted robbery of the cocaine dealers. He asserts that the vagueness in the multiple charges prevented him from preparing a defense.

In *People v. Gnout*, 183 Colo. 366, 369, 517 P.2d 394, 395 (1973), we said:

It is well settled in Colorado that an information is sufficient if it informs the defendant of the charges against him so as to enable him to prepare a defense and plead the judgment in bar of any further prosecutions for the same offense.

Count 2 stated:

GERALD LEE HICKMAN ... did commit and attempt to commit robbery ... and in the immediate flight therefrom ... [a] death ... was caused....

■ In our view, count 2 apprised the defendant that he was charged with a felony murder committed while he was in the immediate flight from both the robbery in the parking lot and the attempted robbery of the cocaine dealers, and allowed him to prepare a defense.

The charge in count 3 was that:

GERALD LEE HICKMAN ... with the intent to promote and facilitate the commission of the crime of Aggravated Robbery ... did unlawfully and feloniously agree ... and with some other person or persons ... that one or more of them would engage in conduct which constitutes a crime and an attempt to commit said crime, and did agree to aid to such other person or persons in the planning and commission and attempted commission of said crime, and an overt act in pursuance of such conspiracy was committed by one or more of the conspirators....

■ Count 3 charged a conspiracy. Since the objective crime need not be described with particularity in a conspiracy count the charge was sufficient. *People v. Goetz*, 41 Colo.App. 60, 582 P.2d 698 (1978).

### F.

Defendant contends that the prosecutor's statement to the jury during voir dire that the state would not be seeking the death penalty constitutes prosecutorial misconduct sufficient to require a mistrial. The defendant moved for a mistrial when the statement was made. The trial judge declined to grant a mistrial, but gave a curative instruction.

■ The statement by counsel regarding the death penalty, though improper, did not require a mistrial. It was within the discretion of the trial judge to deny the motion and rely on a curative instruction. *People v. Anderson*, 184 Colo. 32, 518 P.2d 828 (1974); *People v. Marioneaux*, 44 Colo. App. 213, 618 P.2d 678 (1980).

Accordingly, we affirm in part and reverse in part. The convictions for felony murder and conspiracy to commit aggravated robbery are affirmed. We reverse the second-degree murder conviction and remand to the trial court with instructions to vacate that conviction and sentence.