500 P.3d 1095
Weston Jefferson THOMAS, Petitioner,
v.The PEOPLE of the State of Colorado, Respondent.
Supreme Court Case No. 20SC236 Supreme Court of Colorado.
December 20, 2021
Attorneys for Petitioner: Megan A. Ring, Public Defender, Jacob B. McMahon, Deputy Public Defender, Denver, Colorado
Attorneys for Respondent: Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant Attorney General, Denver, Colorado
En Banc
JUSTICE SAMOUR delivered the Opinion of the Court. ¶1 This appeal presents a potpourri of issues: (1) At what point was the defendant, Weston Jefferson Thomas, under arrest for purposes of the crime of resisting arrest?; (2) Is bodily injury to an at-risk person (a class 6 felony) a lesser included offense of third degree assault (a class 1 misdemeanor)?;1 and (3) Was it error for the trial court to adjudicate Thomas a habitual criminal and sentence him accordingly when two of his three prior felony convictions had been reclassified from class 4 and 6 felonies to level 4 drug felonies? Because we disagree with the court of appeals' analysis of each question, we reverse and remand for further proceedings consistent with this opinion.
¶2 First, we hold that, under the circumstances of this case, when deputies placed Thomas in handcuffs, they applied a level of physical control over him so as to reasonably ensure that he would not leave. Consequently, that's when his arrest was effected for purposes of the crime of resisting arrest. Inasmuch as a person can resist arrest only until the arrest is effected, it was error for the court of appeals to resolve Thomas's challenge to the sufficiency of the evidence on the resisting arrest conviction by relying in part on conduct that followed his handcuffing. On remand, the court of appeals should reconsider Thomas's sufficiency challenge in accordance with this opinion.
¶3 Second, relying on People v. Lowe , 660 P.2d 1261 (Colo. 1983), overruled in part on other grounds by Callis v. People , 692 P.2d 1045 (Colo. 1984), and its progeny, we conclude that Thomas's felony convictions for bodily injury to an at-risk person (hereinafter "bodily injury-AR") and third degree assault of an at-risk person (hereinafter "third degree assault-AR") cannot both stand and must merge. Because both of these convictions are generally grounded in the same statute, and because there was only one victim and only one criminal act, Lowe and its offspring instruct that, absent clear legislative intent, only one of the two felony convictions may remain.2 Given our resolution of the issue on this narrow basis, we need not decide whether bodily injury-AR is a lesser included offense of third degree assault or otherwise reach the merits of Thomas's double jeopardy claim under section 18-1-408(5)(a), C.R.S. (2021), and Reyna-Abarca v. People , 2017 CO 15, 390 P.3d 816. Consistent with our merger jurisprudence requiring us to maximize the effect of the jury's verdicts, we remand with instructions to return the case to the trial court at the appropriate time so that it may merge the convictions for bodily injury-AR and third degree assault-AR into a single conviction for bodily injury-AR.
¶4 Finally, expanding on our recent decision in Wells-Yates v. People , 2019 CO 90M, 454 P.3d 191, we clarify that Thomas's past drug possession convictions could not serve as either triggering offenses or predicate offenses for habitual criminal purposes once they were reclassified as level 4 drug felonies.3 Because two of Thomas's three predicate offenses had been so reclassified when he committed the triggering offense, he should not have been adjudicated a habitual criminal or sentenced as such. It follows that the trial court must resentence Thomas on his bodily injury-AR conviction.
I. Facts and Procedural History
¶5 A not-so-neighborly dispute landed Thomas in hot water. It all started when his seventy-eight-year-old landlady visited his trailer and told him that other tenants were complaining about him being loud and disruptive. Thomas didn't take kindly to the visit. He grabbed the landlady by the neck with both hands, slammed her against a parked car, and yelled that she "didn't belong in this world." A good Samaritan came out of his nearby trailer when he heard the ruckus. He saw Thomas's hands around the landlady's neck as he was pinning her against the car and yelling at her. The good Samaritan separated Thomas from the landlady and restrained him until the police arrived.
¶6 As Deputy Montover attempted to handcuff Thomas, Thomas pulled his hands away and started flailing his arms. Deputy Montover enlisted the help of another deputy, and together, they grabbed Thomas's arms and managed to handcuff him. After he was handcuffed, Thomas went limp and refused to walk. As a result, the deputies were forced to carry him approximately twenty feet to their patrol car while navigating the debris littering the surrounding area—broken glass, TVs, microwaves, and other items. Thomas continued to frustrate the deputies' actions as they transported him to their car.
¶7 The People charged Thomas with multiple crimes and sought to have him adjudicated a habitual criminal. A jury found Thomas guilty of: bodily injury-AR (victim seventy years old or older and thus an at-risk person), a class 6 felony; third degree assault, a class 1 misdemeanor; and resisting arrest, a class 2 misdemeanor. Additionally, the jury found that the People proved the sentence-enhancing allegation accompanying the third degree assault charge: that the victim was seventy years old or older and was thus an at-risk person. That finding elevated the underlying conviction from a class 1 misdemeanor to a class 6 felony.
¶8 At a subsequent bench trial, the People established that Thomas had three prior felony convictions. Although two of those convictions had been reclassified by the legislature from class 4 and 6 felonies to level 4 drug felonies, the court nevertheless adjudicated Thomas a habitual criminal. On each felony conviction (for bodily injury-AR and third degree assault-AR), the court imposed a term of six years imprisonment—four times the maximum sentence in the presumptive range. Then, on the misdemeanor conviction (resisting arrest), the court imposed a term of one year in jail. The court ordered Thomas to serve all the sentences concurrently.
¶9 Thomas appealed, and a division of the court of appeals unanimously affirmed the judgment of conviction and sentence in a published opinion. People v. Thomas , 2020 COA 19M, ¶ 1, 490 P.3d 569, 572. In the petition for certiorari he subsequently filed in our court, Thomas argued that, contrary to the division's conclusions: (1) he should not have been found guilty of resisting arrest based in part on his conduct after he was handcuffed; (2) bodily injury-AR is a lesser included offense of third degree assault and thus his conviction for bodily injury-AR must merge into his conviction for third degree assault-AR; and (3) his drug possession convictions should not have served as predicate offenses for habitual criminal purposes because they had been reclassified as level 4 drug felonies.4 We granted Thomas's petition and now address each of his contentions in turn.
II. Analysis
A. Thomas's Conduct After He Was Handcuffed Cannot Support His Conviction for Resisting Arrest
1. Standard of Review ¶10 A cornerstone of our criminal justice system is "the requirement that the prosecution ... must establish the guilt of the accused by proof beyond a reasonable doubt." People v. Kilgore , 2020 CO 6, ¶ 28, 455 P.3d 746, 751 (quoting People v. Hill , 182 Colo. 253, 512 P.2d 257, 258 (1973) ). More specifically, "the prosecution must prove every element of the charged offense beyond a reasonable doubt." People v. Vidauri , 2021 CO 25, ¶ 10, 486 P.3d 239, 241. When a defendant challenges the sufficiency of the evidence supporting a conviction, an appellate court reviews the record de novo to determine whether the evidence presented is sufficient both in quantity and quality to satisfy this burden. People v. Harrison , 2020 CO 57, ¶ 31, 465 P.3d 16, 23. In doing so, however, we "may not serve as a thirteenth juror" by considering whether we "might have reached a different conclusion than the jury." Id. at ¶ 33, 465 P.3d at 23. Nor may we invade the jury's province by second-guessing any findings that are supported by the evidence. Id. Instead, we must "inquire whether the evidence, ‘viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.’ " Id. at ¶ 32, 465 P.3d at 23 (quoting People v. Bennett , 183 Colo. 125, 515 P.2d 466, 469 (1973) ). Thus, we are required to "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence." Id. (quoting People v. Perez , 2016 CO 12, ¶ 25, 367 P.3d 695, 701 ). 2. Discussion ¶11 The People charged Thomas with resisting arrest pursuant to section 18-8-103(1)(b), C.R.S. (2021). As such, they had to prove beyond a reasonable doubt that he knowingly prevented or attempted to prevent "a peace officer ... from effecting an arrest" by using any means, other than physical force or violence (or threats to use physical force or violence), "which create[d] a substantial risk of causing bodily injury to the peace officer or another." § 18-8-103(1)(b).
¶12 The division concluded that by going limp while being moved to the patrol car, Thomas resisted the deputies’ efforts to put him in the patrol car. Thomas , ¶¶ 19–21, 490 P.3d at 574–75. Hence, determined the division, "it was proper for the jury to consider the evidence of Thomas's conduct after he was handcuffed with regard to the charge of resisting arrest." Id. at ¶ 21, 490 P.3d at 575. Such evidence, in the division's view, included the physical condition of the area, which arguably "created a substantial risk of causing bodily injury" to the deputies. Id.
¶13 Thomas now urges us to hold that his arrest was completed when he was handcuffed and that the division therefore incorrectly considered evidence of subsequent conduct. The People counter that Thomas's arrest was not "effected" until he was securely placed in the patrol car. The jugular question is: When was Thomas under arrest for purposes of the resisting arrest statute?
¶14 Although not on all fours with this case, People v. Armstrong , 720 P.2d 165 (Colo. 1986) sheds some light on the matter. That case dealt with subsection (1)(f) of the second degree assault statute, section 18-3-203, C.R.S. (2021), which, as pertinent here, defines second degree assault against a peace officer while the defendant is in custody (abbreviated here as "second degree assault"). Id. at 167. Armstrong argued that the second degree assault statute was unconstitutional because it prescribed more severe sanctions than the resisting arrest statute for the same criminal conduct. See id. at 168. We disagreed, however.
¶15 We distinguished the crimes of second degree assault and resisting arrest in Armstrong by focusing on the triggering event for an "in custody" determination. Id. at 168–69. We held that when a person subject to arrest resists arrest, the person is "in custody" for purposes of the second degree assault statute only after an arrest has been "effected." Id. at 169. To effect an arrest, we noted, an officer "must apply a level of physical control over the person resisting the arrest so as to reasonably ensure that the person does not leave." Id. We added that, up until the point when the arrest is effected, a person may commit resisting arrest but not second degree assault, and once the arrest is effected, a person may commit second degree assault but not resisting arrest. Id. Thus, we concluded, the two crimes are mutually exclusive. Id. ¶16 Armstrong teaches that, at least in this context, "custody connotes physical control." People v. Thornton , 929 P.2d 729, 733 (Colo. 1996). In conformity with this lesson, we held in Thornton that "effecting an arrest, in the sense of establishing physical control over the arrestee, is required before a person is ‘in custody’ for the purposes of the escape statute." Id. We reiterated that to effect an arrest, an officer must establish sufficient physical control over the suspect "to provide reasonable assurance that the suspect will not leave." Id. at 734.5 ¶17 Under the circumstances of this case, we conclude that the deputies effected Thomas's arrest when they handcuffed him. It's at that point that the deputies applied a level of physical control over him that reasonably ensured that he would not leave. See id. ; cf. Wieder v. People , 722 P.2d 396, 398–99 (Colo. 1986) (ruling that "an arrest had clearly been effected" and the defendant was "in custody" under the second degree assault statute when, while in handcuffs, he assaulted officers as they attempted to place him in their patrol car). That was the line of demarcation at which the crime of resisting arrest ended and the potential to commit the crimes of second degree assault and escape began. ¶18 Because the division determined otherwise and thus considered Thomas's conduct after he was handcuffed, we reverse. On remand, the division should reexamine Thomas's sufficiency challenge in accordance with this opinion.6 B. Thomas's Convictions for Bodily Injury-AR and Third Degree Assault-AR Must Merge
1. Standard of Review ¶19 Whether two convictions must merge is a question of law that we review de novo. Page v. People , 2017 CO 88, ¶ 6, 402 P.3d 468, 469. Because Thomas didn't preserve his double jeopardy claim, we may only reverse if entering convictions for both bodily injury-AR and third degree assault-AR was plain error. Reyna-Abarca , ¶ 47, 390 P.3d at 823.
2. Discussion
¶20 Thomas maintains that bodily injury-AR is a lesser included offense of third degree assault and, therefore, he cannot stand convicted of both bodily injury-AR and third degree assault-AR without violating the Double Jeopardy Clauses of the federal and state constitutions. We agree that the convictions for bodily injury-AR and third degree assault-AR must merge, but we resolve the issue on narrower grounds and ultimately conclude that, of the two convictions, the one for bodily injury-AR should remain.
a. The Double Jeopardy Clauses ¶21 The United States and Colorado constitutions provide that a person shall not "be twice put in jeopardy" for the same offense. U.S. Const. amend. V ; Colo. Const. art. II, § 18. The protective umbrella of these constitutional provisions affords a criminal defendant shelter not only against a second trial for the same offense but also against multiple punishments for the same offense. Reyna-Abarca , ¶ 49, 390 P.3d at 824. ¶22 We've made clear, however, that the protection afforded by the Double Jeopardy Clauses does not preclude the legislature "from authorizing multiple punishments based on the same criminal conduct." Friend v. People , 2018 CO 90, ¶ 14, 429 P.3d 1191, 1194. After all, the legislature—and the legislature alone—has the power "to define criminal offenses and to prescribe the punishments to be imposed on those found guilty of them." Reyna-Abarca , ¶ 49, 390 P.3d at 824. In this way, the Double Jeopardy Clauses "simply embod[y] the constitutional principle of separation of powers by ensuring that courts do not exceed their own authority by imposing multiple punishments not authorized by the legislature." Woellhaf v. People , 105 P.3d 209, 214 (Colo. 2005). As the Supreme Court put it more than four decades ago, the constitutional guarantee against double jeopardy in no way handcuffs the legislature in defining crimes and fixing punishments; rather, it "serves principally as a restraint on courts and prosecutors." Brown v. Ohio , 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). ¶23 Thus, to decide whether the punishments imposed by a court on a defendant pass double jeopardy muster, we must first "determine what punishments the legislature has authorized." Reyna-Abarca , ¶ 50, 390 P.3d at 824. As relevant here, the legislature has decreed that when a defendant's conduct establishes the commission of more than one offense, the defendant may be prosecuted for each offense, but if one offense is included in the other, the defendant may not be convicted of both. § 18-1-408(1)(a) ; Reyna-Abarca , ¶ 51, 390 P.3d at 824. An offense is included in another offense when, as pertinent here, "[i]t is established by proof of the same or less than all the facts required to establish the commission of the [other] offense." § 18-1-408(5)(a).
b. The Subset Test
¶24 In Reyna-Abarca , we adopted the "subset" test to evaluate whether an offense is a lesser included offense of another offense under section 18-1-408(5)(a). ¶ 64, 390 P.3d at 826. We held that an offense is a lesser included offense of a greater offense "if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." Id.
¶25 Relying on Reyna-Abarca 's subset test, Thomas argues that bodily injury-AR is a lesser included offense of third degree assault because, in his view, bodily injury-AR contains only elements that are also included in the elements of third degree assault:7 Bodily Injury-AR, § 18-6.5-103(2)(c), C.R.S. (2021)
Third Degree Assault, § 18-3-204(1)(a), C.R.S. (2021)
1) the defendant
1) the defendant
2) at or about the date and place charged
2) at or about the date and place charged
3) with criminal negligence
3) knowingly or recklessly
4) caused bodily injury
4) caused bodily injury
5) to an at-risk person
5) to another person
As this chart shows, there are only two elements that differ between bodily injury-AR and third degree assault: element 3 (the culpable mental state) and element 5 (the victim's at-risk status). Not surprisingly, Thomas focuses on these two elements.
¶26 With respect to element 3, Thomas reminds us that we recently held that (1) criminal negligence (the culpable mental state of bodily injury-AR) is a less culpable mens rea than both knowingly and recklessly (the two possible culpable mental states of third degree assault), and (2) acting with criminal negligence is necessarily proven by acting either knowingly or recklessly. See People v. Rigsby , 2020 CO 74, ¶¶ 21–22, 471 P.3d 1068, 1074–75 ; § 18-1-503(3), C.R.S. (2021). Hence, urges Thomas, the element of criminal negligence is a subset of the element of knowingly or recklessly.
¶27 With respect to element 5, Thomas contends that an at-risk person (as required by bodily injury-AR) is a subset of another person (as required by third degree assault) under Reyna-Abarca.8 Thomas asserts that just as a motor vehicle is always a thing of value and thus a subset of a thing of value, see Reyna-Abarca , ¶ 67, 390 P.3d at 827 (applying the new subset test to the scenario in Meads v. People , 78 P.3d 290 (Colo. 2003) ), so too an at-risk person is always another person and thus a subset of another person.
¶28 The People do not quibble with Thomas's position on element 3 (the culpable mental state). They concede that criminal negligence is a less culpable mens rea than both knowingly and recklessly, and they agree that criminal negligence is a subset of both knowingly and recklessly. ¶29 However, as it relates to element 5 (the victim's at-risk status), the People invoke the "corollary" to Reyna-Abarca 's subset analysis. Page , ¶ 11, 402 P.3d 468, 470–71 (explaining that, under the corollary to Reyna-Abarca 's subset test, "if establishing the elements of the greater offense necessarily establishes the elements of the lesser, then the lesser offense is included in the greater"); People v. Rock , 2017 CO 84, ¶ 16, 402 P.3d 472, 478 (explaining that, corollary to and thus consistent with Reyna-Abarca 's holding, "an offense the commission of which is necessarily established by establishing the elements of a greater offense must also be included in that greater offense").9 Because proving that the victim was another person doesn't necessarily establish that the victim was an at-risk person, the People contend that an at-risk person is not a subset of another person. In any event, continue the People, adopting Thomas's position would lead to an absurd result because it would make a class 6 felony a lesser included offense of a class 1 misdemeanor and thereby potentially require that a felony conviction merge into a misdemeanor conviction.
¶30 We need not venture into this thorny legal thicket. Instead, following Lowe and its offspring, we settle the parties' dispute on a narrower basis. We conclude that even if, as the People assert, bodily injury-AR is not a lesser included offense of third degree assault, Thomas's convictions for bodily injury-AR and third degree assault-AR must nevertheless merge.
c. Lowe and Its Offspring
¶31 We have acknowledged the application of the judicially-created rule of merger "outside the context" of a lesser included offense analysis in limited circumstances, such as where the defendant has been convicted on more than one count of first degree murder for the death of a single victim. People v. Wood , 2019 CO 7, ¶ 31, 433 P.3d 585, 593. In Lowe , we applied "the rule of lenity" and circumvented Lowe's claim that his dual convictions for first degree murder after deliberation and first degree felony murder violated his double jeopardy rights. 660 P.2d at 1268–69. We held that the two convictions had to merge because the legislature had not manifested "any clear intent that a defendant could be convicted of more than one kind of first-degree murder where there is but one victim." Id. at 1269. We reasoned that, in the absence of clear legislative intent, the rule of lenity required "that the first-degree murder statute be construed to favor the defendant." Id. ; see also People v. Leske , 957 P.2d 1030, 1041 (Colo. 1998) (recognizing that, under Lowe , "even where an offense does not qualify as a lesser-included offense ..., ambiguity in the statutory scheme defining the offenses in question" may require that one of the convictions be vacated).
¶32 Viewing the first degree murder statute through the prism of the rule of lenity, we declared in Lowe that there is "only one crime of first-degree murder, although there are four ways of committing the crime," and therefore, "[o]nly one conviction" of first degree murder may enter "for the killing of one victim." 660 P.2d at 1270–71. Consequently, we said, "[o]nly one judgment of conviction and one punishment can be imposed for one first-degree murder." Id. at 1271. We noted that "[i]t would be a strange system of justice that would permit the defendant to be sentenced to two concurrent life sentences for the killing of one person." Id.
¶33 Continuing on the path cleared by Lowe , in People v. Bartowsheski , 661 P.2d 235 (Colo. 1983), we again bypassed the defendant's double jeopardy claim following dual convictions for first degree murder after deliberation and first degree felony murder in relation to the killing of a single victim. Id. at 246. Instead, we resolved the issue on the "narrower basis" set forth in Lowe : Given the absence of clear legislative intent, and given that the convictions were "predicated upon the killing of a single victim," we concluded that the rule of lenity prohibited convictions for both murder after deliberation and felony murder. Id.
¶34 We applied the same analytical framework the following year in People v. Hickam , 684 P.2d 228 (Colo. 1984). But Hickam differed from Lowe and Bartowsheski in an important way: Whereas Lowe and Bartowsheski involved a single crime (first degree murder) defined in a single statute ( section 18-3-102, C.R.S. (2021) ), Hickam implicated two different crimes defined by two separate statutes. 684 P.2d at 231. Hickam stood convicted of first degree felony murder, pursuant to section 18-3-102, and second degree murder, pursuant to section 18-3-103, C.R.S. (2021)—the latter as a lesser included offense of the charged crime of first degree murder after deliberation. Id. While second degree murder is a lesser included offense of first degree murder after deliberation, it is not a lesser included offense of first degree felony murder. Leske , 957 P.2d at 1042. Still, we held that, under Lowe , Hickam could not remain convicted of both first degree felony murder and second degree murder for the killing of a single victim. Hickam , 684 P.2d at 231 ; see also Leske , 957 P.2d at 1042. As we observed some years later, "it would have been anomalous to conclude in Hickam that a defendant could be convicted of both felony murder, which Lowe established as merely a ‘theory’ for proving first degree murder, and second-degree murder based upon the killing of a single victim." Leske , 957 P.2d at 1042.
¶35 In Hickam , having second degree murder as a lesser included offense of one kind of first degree murder (after deliberation) but not of another (felony murder) created enough of a statutory ambiguity to justify our reliance on Lowe and the rule of lenity. 684 P.2d at 231 ; Leske , 957 P.2d at 1042. Accordingly, we vacated Hickam's conviction and sentence for second degree murder. Hickam , 684 P.2d at 231 ; see also Wood , ¶¶ 33–34, 433 P.3d at 594 (clarifying that if there are two multiplicitous convictions, vacating one is just as effective as merging the two).
¶36 Lowe has stood the test of time. After Bartowsheski and Hickam , we adhered to it again in People v. Saathoff , 790 P.2d 804, 807 (Colo. 1990), overruled in part on other grounds by People v. Dunlap , 975 P.2d 723, 740 (Colo. 1999) ; People v. O'Neill , 803 P.2d 164, 173–74 (Colo. 1990) ; and People v. Glover , 893 P.2d 1311, 1315 (Colo. 1995). In fact, we relied on Lowe just a couple of years ago in Wood , ¶ 27, 433 P.3d at 593.
¶37 Significantly, we've expanded the rationale in Lowe beyond the homicide arena. See People v. Moore , 877 P.2d 840, 845 (Colo. 1994). In Moore , we stated that, "[i]f there is only one victim, and one criminal act, the defendant can be convicted of only one count of assault." Id. This makes perfect sense. If a defendant can be convicted of only one count of first degree murder for the killing of one victim, it stands to reason that a defendant can likewise be convicted of only one count of assault when there is only one victim and only one criminal act.
¶38 In Moore , we refused to hold that the defendant's conviction for sexual assault on a child, a class 3 felony, merged into his conviction for first degree assault (after provocation), a class 5 felony, even though a rote application of the strict elements test (the test governing lesser included offense analysis at the time) arguably would have required such a merger.10 Id. at 845–46 ; accord Leske , 957 P.2d at 1041 n.14. Choosing to proceed "on statutory grounds" rather than undertake "a double-jeopardy analysis," we pointed out that the assault and the sexual assault involved two separate criminal acts against two different victims. Moore , 877 P.2d at 843, 845. In the process, we avoided the absurdity of pronouncing a class 3 felony a lesser included offense of a class 5 felony and of sanctioning the merger of a conviction for the former into one for the latter. Id. at 845. Leaning on the all-too-familiar tenet of statutory construction that calls on us to presume that the legislature intends reasonable (not illogical) results, we discerned that the legislature could not have intended to require such an outcome. Id.
¶39 Apparently taking a cue from our expansion of Lowe in Moore , the defendant in Leske advanced an argument anchored in the rule of lenity, even though his convictions were for sexual assault, not homicide. 957 P.2d at 1041. But the defendant asserted in the first instance that his convictions for sexual assault on a child and sexual assault on a child by one in a position of trust should merge because the former was a lesser included offense of the latter. Id. at 1038. Applying the lesser included offense test then in effect, however, we rejected his contention. Id. at 1038–40.
¶40 Of more relevance for our purposes is the defendant's alternative position in Leske : He asserted that, even if sexual assault on a child was not a lesser included offense of sexual assault on a child by one in a position of trust, the rule of lenity nevertheless required that there be only one sexual assault conviction for the same act of sexual assault on the same child. Id. at 1041. We found the rule of lenity inapposite, but not because we perceived it to be cabined to homicide cases. Id. at 1041–42. Instead, we detected no ambiguity in the statutes defining the pertinent offenses. Id. at 1042. We reasoned that, unlike the offenses in Lowe , sexual assault on a child and sexual assault on a child by one in a position of trust were "not merely alternative ways of proving sexual assault" and were defined in "separate and independent statutory sections." Id. And, we continued, sexual assault on a child and sexual assault on a child by one in a position of trust differed from one another in significant ways—(1) someone could be convicted of the position of trust offense (but not of the other offense) without having a four-year age disparity with the victim, (2) someone could be convicted of the position of trust offense (but not of the other offense) if the victim was fifteen to seventeen years old, and (3) only the position of trust offense required proof that the defendant was in a position of trust with respect to the victim. Id. at 1041–42.
¶41 The court of appeals has followed Moore 's lead and applied Lowe outside the homicide realm. For example, in People v. Lucero , 985 P.2d 87, 93 (Colo. App. 1999), it observed that, under the rule of lenity and our decision in Lowe , a defendant "cannot be convicted of more than one kind of ... vehicular assault" against the same victim. And in People v. Baird , 66 P.3d 183, 193 (Colo. App. 2002), it agreed with the People "that under the reasoning of Lowe , only one conviction of first degree assault should be entered" because there was only one victim and one criminal act. As the People admitted there, "the two forms of assault" in question were not separate offenses for which the legislature had approved different punishments; rather, they were "alternative ways of proving the same offense—first degree assault." Id. ; accord People v. Maass , 981 P.2d 177, 187 (Colo. App. 1998) (citing Lowe in support of its conclusion that, since the defendant's "two conspiracy convictions" were premised "on a single agreement, he committed only one crime" and thus "only one judgment and one sentence" could be imposed).
d. Applying Lowe and Its Descendants to Thomas's Convictions for Bodily Injury-AR and Third Degree Assault-AR ¶42 Using Lowe and its descendants as beacons to guide our analysis, we now turn to Thomas's felony convictions. We direct our focus to the statutory provisions in play. After all, per Lowe , the keystone of our analysis is the legislature's intent.
¶43 Section 18-6.5-103 governs "[c]rimes against at-risk persons" in Colorado. After proclaiming in subsection (1) that "[c]rimes against at-risk persons" in this state "are as prescribed in this section," the statute provides, in pertinent part:
(2) Any person whose conduct amounts to criminal negligence ... commits:
(a) A class 4 felony if such negligence results in the death of an at-risk person;
(b) A class 5 felony if such negligence results in serious bodily injury to an at-risk person; and
(c) A class 6 felony if such negligence results in bodily injury to an at-risk person.
(3)(a) Any person who commits a crime of assault in the first degree, as such crime is described in section 18-3-202, [C.R.S. (2021),] and the victim is an at-risk person, commits a class 4 felony if the circumstances described in section 18-3-202(2)(a) are present and a class 2 felony if such circumstances are not present. (b) Any person who commits a crime of assault in the second degree, as such crime is described in section 18-3-203, and the victim is an at-risk person, commits a class 5 felony if the circumstances described in section 18-3-203(2)(a) are present and a class 3 felony if such circumstances are not present.
(c) Any person who commits a crime of assault in the third degree, as such crime is described in section 18-3-204, and the victim is an at-risk person, commits a class 6 felony.11 § 18-6.5-103(2), (3) (emphases added).
¶44 Subsection (2) "creates a separate substantive offense." People v. Lovato , 179 P.3d 208, 211 (Colo. App. 2007). It punishes anyone who, acting with criminal negligence (the least culpable mens rea), causes bodily injury, serious bodily injury, or death to an at-risk person. A defendant convicted of this offense commits a class 4, 5, or 6 felony depending on whether the at-risk victim suffers death (subsection (2)(a)), serious bodily injury (subsection (2)(b)), or bodily injury (subsection (2)(c)), respectively. We concentrate our attention here on the bodily injury (class 6 felony) provision in subsection (2)(c).
¶45 Had the legislature stopped at subsection (2)(c), the statutory scheme would have yielded an aberrant result: Causing bodily injury to an at-risk person by acting with criminal negligence (i.e., bodily injury-AR) would have been a class 6 felony, but causing bodily injury to any victim (including an at-risk victim) by acting knowingly or recklessly (each a more culpable mens rea than criminal negligence) would have remained a class 1 misdemeanor under the third degree assault statute. The legislature, however, didn't stop at subsection (2)(c); it warded off this illogical result through a sentence-enhancing mechanism. Enter subsection (3)(c).
¶46 Subsection (3)(c) resides in the same statute as subsection (2)(c); in fact, subsection (3) is subsection (2)'s next-door neighbor. Under subsection (3)(c), a misdemeanor conviction for third degree assault is transformed into a class 6 felony conviction for third degree assault-AR when the victim is an at-risk person. See Colo. Motor Vehicle Dealer Bd. v. Freeman , 2016 CO 44, ¶ 13, 375 P.3d 111, 113–14.
¶47 It is clear to us that, through subsections (2)(c) and (3)(c), the legislature established different ways to protect at-risk persons by making it a class 6 felony whenever someone acting with a culpable mental state—regardless of which one—causes them bodily injury. The legislative declaration related to Title 18's article 6.5, which includes the statute that houses subsections (2)(c) and (3)(c), speaks volumes about why the penalties for the specified crimes committed against at-risk persons "should be more severe" than the penalties for the commission of the same crimes against other members of the population:
The general assembly recognizes that ... at-risk persons are more vulnerable to and disproportionately damaged by crime in general but, more specifically, by abuse, exploitation, and neglect because they are less able to protect themselves against offenders, a number of whom are in positions of trust, and because they are more likely to receive serious injury from crimes committed against them and not to fully recover from such injury. At-risk persons are more impacted by crime than the general population because they tend to suffer great relative deprivation, financially, physically, and psychologically, as a result of the abuses against them. § 18-6.5-101, C.R.S. (2021).
¶48 Of course, the question before us isn't whether the legislature meant to punish someone who causes bodily injury to an at-risk person more severely than someone who causes bodily injury to a person who is not at risk. The question we confront is whether, under the circumstances of this case, the legislature intended to allow convictions for both bodily injury-AR and third degree assault-AR based on one criminal act against a single at-risk victim.
¶49 We see no manifestation in section 18-6.5-103 of "any clear intent that a defendant could be convicted" of both bodily injury-AR and third degree assault-AR for one criminal act against a single at-risk victim under the specific circumstances present here. See Lowe , 660 P.2d at 1269. Subsections (2)(c) and (3)(c) are part of a single statute (the statute defining crimes against at-risk persons) and are essentially two alternative pathways to the same destination—a class 6 felony conviction for causing bodily injury to an at-risk person. Just as first degree murder after deliberation and first degree felony murder were two alternative ways of committing the crime of first degree murder in Lowe , bodily injury-AR and third degree assault-AR are, for all intents and purposes, two alternative ways of committing the crime of bodily injury against an at-risk person. At a minimum, there is ambiguity about whether the legislature intended to allow the People to double-dip when prosecuting someone like Thomas for causing bodily injury to an at-risk person.
¶50 Because the rule of lenity requires us to construe any lack of statutory clarity to favor Thomas, we conclude that he could be convicted of either bodily injury-AR or third degree assault-AR, but not both, for causing bodily injury to his landlady (a single at-risk victim) by grabbing her by the neck and slamming her against a car (a single criminal act). See id. Echoing what we said in Moore , because there was only one victim and only one criminal act, there can be only one conviction for assault. See 877 P.2d at 845. Indeed, it would be a strange system of justice that would permit Thomas to be convicted of and sentenced for both bodily injury-AR and third degree assault-AR in this case. See Lowe , 660 P.2d at 1271.
¶51 We are not persuaded otherwise by our holding in Leske because the legislature's intent was clear there. See 957 P.2d at 1042. Unlike the scenario in Leske , where the convictions for sexual assault on a child and sexual assault on a child by one in a position of trust were rooted in two separate statutes and differed in significant ways, id. , Thomas's felony convictions for bodily injury-AR and third degree assault-AR are generally grounded in the same statute ( section 18-6.5-103 )12 and differ only in the requisite culpable mental state—with bodily injury-AR requiring proof of criminally negligent conduct and third degree assault-AR requiring proof of knowing or reckless conduct.13 Given that the legislature has decreed that criminal negligence is less culpable than, and is necessarily subsumed within, both knowingly and recklessly, see § 18-1-503(3), we discern no clear legislative intent to allow convictions for bodily injury-AR and third degree assault-AR to coexist under the circumstances of this case.
¶52 In sum, we decline to decide whether the offense of bodily injury-AR is included in the offense of third degree assault. We see this as one of those rare cases in which it is preferable to avoid the lesser included offense analysis and the potential for an absurd result by resolving the matter on a narrower basis. Therefore, in harmony with Lowe and its lineage, we conclude that, even if bodily injury-AR is not a lesser included offense of third degree assault under section 18-1-408(5)(a) and Reyna-Abarca , Thomas's felony convictions for bodily injury-AR and third degree assault-AR must nevertheless merge. Because the trial court failed to merge those convictions, it erred. And because the People do not contest Thomas's argument that the error was obvious and substantial, we conclude that the error was plain. See People v. Jackson , 2020 CO 75, ¶ 60, 472 P.3d 553, 566. ¶53 We acknowledge that the trial court ordered the sentences for bodily injury-AR and third degree assault-AR to run concurrently. But that doesn't remedy the error. Inasmuch as there are a number of "important collateral consequences for a felony conviction beyond that of the sentence imposed," Lowe , 660 P.2d at 1269, the dual convictions for bodily injury-AR and third degree assault-AR result in enhanced collateral punishment. The two convictions must therefore merge.
e. Which Conviction Merges Into the Other? ¶54 We can't lower the curtain on this issue just yet. The question still remains as to which conviction should be reflected on Thomas's mittimus after the merger. When a defendant's convictions must merge under the rationale we espoused in Lowe , "the trial court should be directed to enter as many convictions and impose as many sentences as are legally possible to fully effectuate the jury's verdict." Glover , 893 P.2d at 1315. The goal is to permit "the most convictions and the longest sentences in order to maximize the effect of the ... verdicts." Id.
¶55 Here, the convictions for bodily injury-AR and third degree assault-AR are both class 6 felonies, and Thomas received a six-year prison sentence for each. However, in our view, the conviction for bodily injury-AR, though requiring the less culpable mens rea, is the one that best effectuates the jury's verdicts. This is so because it is the only one that qualifies as a felony and permits a prison sentence without the aid of a sentence enhancer.
¶56 Therefore, in the end, we agree with Thomas that his convictions for bodily injury-AR and third degree assault-AR must merge, but we agree with the People's alternative position that, of the two convictions, the one for bodily injury-AR should remain. Accordingly, on remand, when the matter is finally returned to the trial court, that court should amend the mittimus to reflect that Thomas's convictions for bodily injury-AR and third degree assault-AR merge into a single conviction for bodily injury-AR.
C. Thomas Should Not Have Been Adjudicated a Habitual Criminal or Sentenced As Such
1. Standard of Review ¶57 Thomas's attack on his eligibility for habitual criminal adjudication and sentencing can most accurately be characterized as a challenge to the sufficiency of the evidence presented at his habitual criminal trial. It is uncontested that this issue was not preserved for review. However, preservation is academic here because we have concluded that "sufficiency of the evidence claims may be raised for the first time on appeal." McCoy v. People , 2019 CO 44, ¶ 27, 442 P.3d 379, 387. Although McCoy involved a challenge to the sufficiency of the evidence in support of the defendant's convictions, we perceive no reason why that holding shouldn't apply with equal force to a sufficiency of the evidence challenge related to habitual criminal adjudication. ¶58 We review de novo unpreserved sufficiency claims, including where, as here, "such claims involve preliminary questions of statutory construction." Id. Questions of statutory construction are similarly subject to de novo review. McCulley v. People , 2020 CO 40, ¶ 10, 463 P.3d 254, 257. When interpreting a statutory provision, we must give "its words and phrases their plain and ordinary meaning," and we must read such words and phrases in context and in accordance with the rules of grammar and common usage. Id.
2. Discussion
¶59 Thomas maintains that, since two of his three prior felony convictions had been reclassified as level 4 drug felonies at the time he committed the triggering offense, they no longer qualified as predicate offenses upon which the trial court could rely to adjudicate him a habitual criminal and sentence him as such. Hence, urges Thomas, we should vacate his sentence for bodily injury-AR and remand for resentencing.14 We agree. ¶60 Colorado's habitual criminal statute, section 18-1.3-801, C.R.S. (2021), provides, in pertinent part, that anyone convicted of a felony who has three previous felony convictions arising out of separate and distinct criminal episodes must be adjudicated a habitual criminal and sentenced to prison for a term of four times the maximum of the presumptive range. § 18-1.3-801(2)(a)(I)(A). Thomas agrees that his class 6 felony conviction for bodily injury-AR qualifies as a triggering offense and that his prior conviction for theft (a class 4 felony) qualifies as a predicate offense. However, he disagrees that the other two felony convictions in his criminal history, a class 4 felony possession of a schedule II controlled substance (more than one gram) and a class 6 felony possession of a schedule II controlled substance (less than one gram), likewise qualify as predicate offenses. Since, at the time he committed the triggering offense, these offenses had been reclassified as level 4 drug felonies, Thomas argues that they no longer qualified as predicate offenses and therefore he was not eligible to be adjudicated a habitual criminal and sentenced as such.
¶61 The habitual criminal statute contains an exception related to level 4 drug felonies:
(2)(a)(I) Except as otherwise provided in paragraph (b) of this subsection (2) ... every person convicted ... of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes ... of a felony ... shall be adjudged an habitual criminal and shall be punished [accordingly] ....
....
(2)(b) The provisions of paragraph (a) of this subsection (2) shall not apply to a conviction for a level 4 drug felony pursuant to section 18-18-403.5(2) , or a conviction for a level 4 drug felony for attempt or conspiracy to commit unlawful possession of a controlled substance, as described in section 18-18-403.5(2), if the amount of the schedule I or schedule II controlled substance possessed is not more than four grams or not more than two grams of methamphetamine, heroin, cathinones, or ketamine or not more than four milligrams of flunitrazepam, even if the person has been previously convicted of three or more qualifying felony convictions. § 18-1.3-801(2)(a)(I), (b), C.R.S. (2015) (emphases added).15 ¶62 The quoted statutory exception references section 18-18-403.5(2)(a), C.R.S. (2021), which provides that a person who possesses "[a]ny material, compound, mixture, or preparation that contains ... more than four grams of a controlled substance listed in schedule I or II ... commits a level 4 drug felony." Here, it is undisputed that the two predicate offenses under challenge had been reclassified as level 4 drug felonies even before Thomas committed the triggering offense.16 ¶63 Giving the words in the exception their plain and ordinary meaning and reading them in context, we conclude that level 4 drug felonies qualify as neither triggering offenses nor predicate offenses for habitual criminal purposes. Had the legislature intended to limit the exception to triggering offenses, it presumably would have said so. Instead, it said that "[t]he provisions of paragraph (a) of ... subsection (2)"—which cover both triggering offenses and predicate offenses—"shall not apply to a conviction for a level 4 drug felony," regardless of whether that conviction is either a triggering offense or a predicate offense.
¶64 We recently reached a similar, albeit less explicit, conclusion in Wells-Yates , ¶ 43, 454 P.3d at 205. There, we explained that the legislature had reclassified two of the defendant's predicate offenses from class 4 felonies, each of which was "eligible to be both a triggering offense and a predicate offense for habitual criminal purposes," to level 4 drug felonies, each of which "carrie[d] less severe penalties and [was] not so eligible. " Id. (emphases added). The "not so eligible" in this sentence necessarily referred to eligibility for "both a triggering offense and a predicate offense." Id. The division considered this statement from Wells-Yates but was unsure about its meaning and concluded, in any event, that it was dictum. Thomas , ¶ 73, 490 P.3d at 582. To the extent that further clarification was needed, we are confident that this opinion provides it.
¶65 Since, at the time of Thomas's triggering offense, two of his prior felony convictions were level 4 drug felonies that no longer qualified as predicate offenses, he was not eligible for adjudication and sentencing as a habitual criminal. Accordingly, we vacate the sentence for bodily injury-AR and remand with instructions to return the case to the trial court at the appropriate time to resentence Thomas on that conviction.
III. Conclusion
¶66 For the foregoing reasons, we disagree with the court of appeals' analysis of each issue before us. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
1 As we explain later, the status of a victim as an at-risk person is a sentence enhancer that elevates a conviction for third degree assault from a class 1 misdemeanor to a class 6 felony. Because the jury found that the People proved the at-risk sentence enhancer accompanying the charge of third degree assault here, Thomas stands convicted of what we refer to as "third degree assault of an at-risk person" (a class 6 felony), not of third degree assault (a class 1 misdemeanor). However, we do not consider sentence enhancers "when determining whether one offense is the lesser included of another." Armintrout v. People , 864 P.2d 576, 580 (Colo. 1993). Therefore, the relevant inquiry for purposes of a lesser included offense analysis is whether bodily injury to an at-risk person is included in third degree assault.
2 Thomas stands convicted of two felonies: (1) bodily injury-AR, for negligently causing bodily injury to an at-risk person, and (2) third degree assault-AR, for knowingly or recklessly causing bodily injury to that at-risk person through the same criminal act.
3 We refer to a felony conviction for which a habitual criminal sentence is imposed as a "triggering offense," and to prior felony convictions on which a habitual criminal sentence is based as "predicate offenses."
4 We agreed to review the following three issues:
1. Whether a person can be guilty of resisting arrest based on post-arrest conduct.
2. Whether negligently causing bodily injury to an at-risk person under section 18-6.5-103(2)(c), C.R.S. (2019), merges into third-degree assault under section 18-3-204(1)(a), C.R.S. (2019).
3. Whether a defendant's past drug-possession offenses, convictions that would now be level-four drug felonies, are valid predicate convictions for habitual criminal sentencing.
5 In a situation not involving resistance to arrest, physical control "does not necessarily require physical restraint through application of force." Thornton , 929 P.2d at 733.
6 Given our decision to remand, we do not address Thomas's remaining contentions related to the sufficiency of the evidence supporting his resisting arrest conviction.
7 Recall that we don't consider sentence enhancers when determining whether an offense is a lesser included offense of another. Armintrout , 864 P.2d at 580. Thus, we look at the statutes defining bodily injury-AR and third degree assault and then compare their elements.
8 "At-risk person" is defined as "any person who is seventy years of age or older or any person who is eighteen years of age or older and is a person with a disability." See § 18-6.5-102(2), (4.5), C.R.S. (2021).
9 In Page and Rock , we addressed the scenario in which a lesser offense may be committed in multiple ways, not all of which are necessarily established by proof of a greater offense. Page , ¶ 11, 402 P.3d at 470 ; Rock , ¶ 15, 402 P.3d at 477–78. We explained that, in order to be included, "every alternative way of committing a lesser offense ... need not be ‘contained’ in the statutory definition of the greater offense." Page , ¶ 11, 402 P.3d at 470 (quoting Rock , ¶ 16, 402 P.3d at 478 ). Rather, it suffices to qualify as a lesser included offense if any set of elements establishing that lesser offense is necessarily established by proof of the statutory elements of the greater offense. Rock , ¶ 16, 402 P.3d at 478.
10 To obtain a conviction for first degree assault, the People had to prove that Moore committed "class 3 felony sexual assault on a child and in the course of or in furtherance of the crime ..., or [in the] immediate flight therefrom, the serious bodily injury of a person, other than a participant in the commission or attempted commission of the crime, [was] caused by anyone." Moore , 877 P.2d at 843 (quoting § 18-3-202(1)(d), C.R.S. (1986) ).
11 As relevant here, a person commits third degree assault by "knowingly or recklessly caus[ing] bodily injury to another person." § 18-3-204(1)(a). There are alternate ways of committing third degree assault, however. For example, a person can commit third degree assault if, acting with criminal negligence, "the person causes bodily injury to another person by means of a deadly weapon." Id.
12 We acknowledge that the conviction for third degree assault-AR is also supported by section 18-3-204(1)(a).
13 We include the at-risk sentence enhancer in this comparison solely as part of our quest to discern whether there is clear legislative intent to permit convictions for both bodily injury-AR and third degree assault-AR under the facts of this case. Cf. Leske , 957 P.2d at 1042 (rejecting the defendant's Lowe -tethered claim after finding "no ambiguity" in the "separate and independent" statutes defining the crimes of sexual assault on a child and sexual assault on a child by one in a position of trust, each of which required proof of facts the other did not).
14 Thomas asks us to remand for resentencing on both felony convictions, but since we've now concluded that those convictions must merge into a single conviction for bodily injury-AR, we limit our discussion accordingly.
15 The legislature has revised the habitual criminal statute since Thomas was sentenced. However, the changes do not affect our analysis.
16 While subsection (2)(b) doesn't exclude all level 4 drug felonies, we refer to the offenses governed by that subsection as simply "level 4 drug felonies." We do so strictly for the sake of convenience.